No. 48,732

STATE OF KANSAS, *Appellee*, v. WILLMORE LARRY BRADLEY, a/k/a LARRY WILLIAMS, *Appellant*.

(576 P.2d 647)

Opinion filed April 1, 1978.

*Stephen J. Bednar*, of Curfman, Brainerd, Harris, Bell, Weigand & Depew, of Wichita, argued the cause and was on the brief for the appellant.

*Stephen M. Joseph*, special assistant district attorney, argued the cause, and *Curt T. Schneider*, attorney general, *Vern Miller*, district attorney, and *Sharon Werner*, assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

MCFARLAND, J.: This is an appeal in a criminal action from a jury verdict which found Willmore Larry Bradley guilty of first degree murder (K.S.A. 21-3401) and aggravated robbery (K.S.A. 21-3427).

The defendant resided with Molleaner Miller in Hutchinson, Kansas. Molleaner Miller was shot by the defendant in their residence on the night of May 23, 1975. On the day of his death the deceased had withdrawn $1,600.00 in cash from a local bank. The body was placed in the trunk of a car by the defendant and his girl friend and dumped in rural Sedgwick County where it was found on May 25, 1975. There was no identification on the body other than a pen with a Hutchinson address. The body was

identified shortly thereafter. The victim had been shot in the back of the head from a distance of more than six inches. There were no injuries to the body that indicated the man had been in a fight prior to the time he was shot. There were injuries indicating the body had been dragged after death. Defendant and his girl friend purchased one-way air line tickets to Hawaii on May 24, 1975, as well as clothing and jewelry. All purchases were paid for in cash. The murder weapon was subsequently found in a septic tank at the Airline Motel in Wichita. The defendant and his girl friend were arrested in Hawaii in August, 1975.

The above statement of facts is not in dispute. There was no question of identity. The state contended Miller was killed while the defendant was attempting to rob him. The state presented witnesses who testified the participants had told them robbery was the motive. The defense was self-defense.

Many points of error are raised on appeal. Several of these points of error are predicated on the admission and exclusion of evidence of deceased's character, prior activities, and past criminal acts. These points will be considered together as they are interrelated.

The first area of controversy lies in the admission into evidence in the state's case in chief of considerable testimony from various witnesses relating to their prior knowledge of the defendant. At trial the defendant objected to this testimony on the grounds that it was not evidence of the deceased's general reputation in the community but, rather, related to personal observations and individual incidents, and was partially remote in time. On appeal the defendant reiterates these objections as well as raising the additional objection that the state should not have been permitted to introduce evidence of deceased's good character prior to such time as the deceased's character was attacked by the defense. Due to certain rulings of the trial court, the defendant, in fact, never did introduce any evidence attacking the character of the deceased.

The general rule is frequently stated that the state can not show the peaceful reputation of the deceased until the character of the deceased is under attack.

"Ordinarily, evidence concerning the character of the deceased is immaterial. It is well settled that the prosecution cannot, in the first instance and as a part of its evidence in chief, or before the character of the deceased has been attacked by the defense, introduce evidence of the reputation of the deceased for peaceableness or

prove that he was a quiet and orderly citizen. Until the defense attacks the character or reputation of the deceased, it cannot be shown by the prosecution, even though, according to the prevailing view, the defendant relies upon self-defense, and his evidence tends to prove that the deceased was the aggressor, although in a few states, where the defendant pleads self-defense and introduces evidence for the purpose of showing an apparently felonious assault upon him by the deceased, the prosecution may, in rebuttal, show the good character or reputation of the deceased for quiet and peace." (40 Am. Jur. 2d, Homicide, § 308, p. 577.)

Accord, 40 C.J.S., Homicide, § 272e; 1 Wharton's Criminal Evidence, § 236 (13th ed. 1972); Annot, 34 A.L.R.2d 451.

The state contends that the afore-enumerated general rules no longer apply in Kansas when the state is on notice that the defense will be self-defense. Much verbiage in the briefs of the parties is consumed with the question of whether or not the specific evidence admitted complied with K.S.A. 60-446 and 60-447. The first question to be resolved is whether or not evidence of the character of the deceased, whether in proper form or not, should have been admitted in the state's case in chief. K.S.A. 60-446, -447, -448, -449, and -450 all relate to how character, custom, or habit may be proved. The state's contention that the enactment of these statutes gives them the right to introduce such evidence in its case in chief is incorrect. In 1874 in *State v. Potter*, 13 Kan. 414, we said:

"On a trial for murder, it is error to permit the state in the first instance, and as a part of its case, to offer testimony showing the character or reputation of the deceased as a quiet and peaceable man." (Syl. 1.)

The statement in *Potter* was a correct statement of the law of Kansas at that time and it remains a correct statement. The 1963 rules of evidence do not overrule *Potter*. The admission of such evidence in the state's case in chief was error. In this case the character of the deceased was never attacked on the record. The admission of such evidence was error.

The defendant testified that he was lying on the bed with his girl friend when the deceased came into the room in an intoxicated condition. The deceased was armed and fired a shot at the defendant with the bullet striking the mattress near defendant's head. The defendant contended that he jumped up from the bed and struggled with the defendant in an effort to turn the gun away from himself. The defendant sought to show that the motive for this unprovoked attack upon him by the deceased was that the

deceased had been involved in Topeka in an assault with a gun on a Topeka police officer. Charges were brought against the deceased in connection with that incident and an additional charge was brought when the deceased failed to appear. The deceased was being sought by Shawnee County authorities in connection with this incident. The defendant was a known police informer and believed that this latter fact had been communicated to the deceased by the deceased's nephew shortly before the incident in question. The defendant sought to establish that fear of being turned in to authorities by the defendant was the motive of the decedent for the attack.

Anticipating the strategy of the defense, the state made a motion *in limine* to exclude any reference in the trial to the Topeka incident and matters relating thereto. The motion was sustained. The defendant sought at trial, through a proffer of evidence, to be permitted to introduce this testimony to show character, intent, and motive on the part of the deceased. The trial court excluded this evidence as it did not show general reputation in the community or a prior conviction. The trial court considered this proffer only on the basis of character and, finding that it did not meet the criteria for establishing bad character, rejected it. On the basis of evidence of bad character, the trial court was correct in its ruling. However, it was error not to admit the evidence on the basis of intent and motive.

The state took full advantage of the situation and, in a carefully worded question, on cross-examination of the defendant asked him:

Q. "Can you tell us why for no apparent reason he would walk in and pull a gun because you told him to sit down before he fell down and start shooting at you?
A. "Could I tell you why?
Q. "Yeah.
A. "No."

The state knew the defendant could not "tell us why" because the court had already ruled that he could not, so the answer had to be no.

The only evidence before the jury of the deceased's character was the evidence of good character presented by the state in its case in chief. The defendant's theory of defense as to why the attack occurred was excluded by the trial court. The defendant had a right to present his theory of defense. He had the right to

introduce into evidence what he believed was the motive and intent by the deceased for what he claimed was an attack by the deceased upon his person. This was an integral part of his claim of self-defense or justifiable homicide. It is fundamental to a fair trial to allow the accused to present his version of the events so that the jury may properly weigh the evidence and reach its verdict. The right to present one's theory of defense is absolute. The trial court improperly used the evidentiary rules of establishing character to exclude relevant and material information pertaining to the defense.

By permitting the state to introduce evidence of the deceased's good character in its case in chief and precluding the defendant from introducing evidence pertaining to motive and intent, the trial court piled error upon error. We have no hesitancy in finding that the defendant's fundamental right to a fair trial was violated.

On appeal the defendant further claims error in the overruling of his motion to dismiss for lack of venue. Both the state and the defense counsel knew, prior to trial, that the evidence would show the deceased was shot and killed in Reno County and that any robbery, likewise, occurred in Reno County. The only link to Sedgwick County was that the body was taken there and left. The location of the alleged crimes was never in dispute. The trial court raised the issue of venue during trial and belatedly the defense counsel made a motion to dismiss on grounds of venue. Numerous other points of error are raised. There is no need to determine these points by virtue of the conclusions previously reached herein.

The judgment and convictions are reversed and the case is remanded for a new trial with directions that the case be transferred to Reno County.