No. 72,720

STATE OF KANSAS, *Appellee*, v. JON MARSHALL MADER,
*Appellant.*
931 P.2d 1247

Opinion filed
January 24, 1997.

*Benjamin C. Wood*, of Lawrence, argued the cause and was on the brief for appellant.

*Scott I. Showalter*, acting county attorney, argued the cause, and *Michael D. Irvin*, acting county attorney, and *Carla J. Stovall*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

DAVIS, J.: The defendant was convicted of aggravated battery. He claimed self-defense. The trial court, over objection, allowed the State to present independent evidence of the peaceable nature of the victim when the character of the victim was not at issue. The Court of Appeals affirmed, holding that the exclusion of such evidence was limited to homicide cases. We granted the defendant's

petition for review to determine whether, under the circumstances, independent evidence of the peaceable nature of the victim was admissible in this aggravated battery case.

The defendant, Jon Marshall Mader, was charged with aggravated battery, K.S.A. 21-3414, for striking Travis Radnor in the chin. The defendant and his friend, Jesse Barrera, were "hanging out" at the local Love's Country Store with several groups of young people from Colby. Barrera, who was from Brewster, heard that some people from Winona were harassing his sister. Because of this report as well as a rivalry among young people from Brewster and Winona, Barrera and the defendant left to look for the reported group of Winona youth. Whether Barrera and others planned to fight the Winona youth was a matter of dispute, however, several cars of Colby youth followed Barrera and the defendant to see what would happen.

The same night, the victim, Travis Radnor, and his girlfriend came to Colby from Winona to see a movie. After the movie they met friends from Winona who were parked in a parking lot. While they were there, several cars of Colby youth arrived. The Colby group approached the Winona group.

Barrera was friendly with Radnor. Nevertheless, Radnor spoke with hostility towards the defendant as he approached. The defendant responded in kind. The defendant and Radnor had never met and did not know one another.

Witnesses disagreed whether Radnor aggressively lunged toward the defendant at that time or whether he simply stood up from leaning on his car. Upon the motion by Radnor, the defendant struck him in the jaw, causing him to fall to his hands and knees. Testimony again conflicted on whether the defendant also kicked Radnor when he was down.

After Radnor was hit, Barrera said something to the effect that the defendant had hit the wrong guy. The defendant and Barrera proceeded to help Radnor get cleaned up from the blood, which included driving him to a location with running water. Following this activity, Radnor's friends first notified an emergency medical technician, then Radnor's mother. Radnor was admitted to the

Colby hospital that night. As a result of his injuries, Radnor underwent extensive reconstructive and dental surgery.

. At trial, the defendant alleged that he acted in self-defense. The issue of whether the defendant or Radnor was the aggressor was hotly disputed. After being convicted by the jury, the defendant appealed to the Court of Appeals. The Court of Appeals affirmed in an unpublished opinion filed May 17, 1996.

### Discussion and Analysis

In its case in chief, the State questioned 9 of its 14 witnesses as to whether they knew any tendency of the victim, Radnor, to get into or provoke fights. Initially, the court sustained an objection on the basis of relevancy when the State asked a local police officer whether any complaints had ever been filed against Radnor. However, the trial court overruled the defendant's objection the next time the State entered into this line of questioning. The State proceeded to ask its remaining witnesses their opinion of Radnor's general reputation and character for peacefulness. The State made reference to Radnor's peaceable character in its closing arguments to the jury.

As early as 1874 in the case of *State v. Potter*, 13 Kan. 414, Syl. ¶ 1 (1874), this court held that "[o]n a trial for murder, it is error to permit the state in the first instance, and as a part of its case, to offer testimony showing the character or reputation of the deceased as a quiet and peaceable man." In the more recent case of *State v. Bradley*, 223 Kan. 710, Syl. ¶ 1, 576 P.2d 647 (1978), we again affirmed this principle: "In a murder trial the state may not introduce evidence of good character of the deceased prior to such time as the defense attacks the character of the deceased. This is equally true in cases where the anticipated defense is self-defense or justifiable homicide."

. At the time *Bradley* was decided, Kansas had adopted the Code of Civil Procedure. One argument made by the State in *Bradley* was that within the code, the enactment of K.S.A. 60-446 and K.S.A. 60-447 gave it the right to introduce such evidence in its case in chief. In response to this argument we said:

"The first question to be resolved is whether or not evidence of the character of the deceased, whether in proper form or not, should have been admitted in the state's case in chief. K.S.A. 60-446, -447, -448, -449, and -450 all relate to how character, custom, or habit may be proved. The state's contention that the enactment of these statutes gives them the right to introduce such evidence in its case in chief is incorrect. In 1874 in *State v. Potter*, 13 Kan. 414, we said:

'On a trial for murder, it is error to permit the state in the first instance, and as a part of its case, to offer testimony showing the character or reputation of the deceased as a quiet and peaceable man.' (Syl. ¶ 1.)

The statement in *Potter* was a correct statement of the law of Kansas at that time and it remains a correct statement. The 1963 rules of evidence do not overrule *Potter*. The admission of such evidence in the state's case in chief was error. In this case the character of the deceased was never attacked on the record. The admission of such evidence was error." 223 Kan. at 712.

Nevertheless, the State in its supplemental brief argues that the defendant attacked the peaceable character of the victim in his opening statement and his cross-examination of the State's witnesses, thereby making such evidence admissible under the following provisions of K.S.A. 60-446:

"When a person's character or a trait of his or her character is in issue, it may be proved by testimony in the form of opinion, evidence of reputation, or evidence of specific instances of the person's conduct, subject, however, to the limitations of K.S.A. 60-447 and 60-448."

The key statement in the above statute is that opinion testimony is admissible when a person's "character is in issue." In this case, the victim's character was never put in issue. The major flaw in the State's argument is its failure to recognize the distinction between character evidence proving the general nature of a person and the propensity of that person to act consistently with his or her character versus the actions of a person on one particular occasion. K.S.A. 60-446; K.S.A. 60-447. Where a defendant relies upon self-defense, his or her attempt to prove that the victim was the aggressor in the incident giving rise to the criminal charge does not, standing alone, place the character of the victim in issue under K.S.A. 60-446.

## Court of Appeals' Decision

The Court of Appeals acknowledged the settled law in *State v.*

*Bradley.* However, the court distinguished the present case from a homicide case:

> "In every case which is not a homicide case, the victim is available for testimony, presumably, and any attempt by the State to characterize the victim as 'peaceful' or other like adjectives could quickly be challenged by the defendant on cross-examination, if evidence to the contrary exists.
>
> "Under the facts stated here, we recognize that homicide cases should be considered differently for this purpose than other types of cases where the victim presumably is available to testify. Accordingly, we approve the trial court's admission of the 'peaceful nature' of the victim here."

No authority is cited in the court's opinion to support its conclusion that the rule should apply only in homicide cases. Our prior cases, although they involved homicide, do not support such a conclusion. The conclusion runs contrary to the majority rule as discussed in leading legal encyclopedias:

> "The general rule is that evidence of the reputation of the person assailed is incompetent, except in support of a plea of self-defense, in which case it has been held proper to give evidence of the general reputation of the prosecuting witness as a quarrelsome, violent, and pugnacious person, particularly where there is a factual issue as to who was the aggressor in the circumstances, and especially if his reputation was known to [the] accused. *The good reputation of the person assailed may be proved in rebuttal where it has been attacked by [the] accused, but not otherwise.*" (Emphasis added.) 6A C.J.S., Assault & Battery § 199, pp. 529-30.

> "It is never competent for the prosecution to show, in the first instance, against the defendant, that the victim of the crime charged was of good or peaceable character. But where the defendant has introduced evidence tending to show the bad character reputation of the victim, the prosecution is entitled to introduce evidence tending to rebut that evidence." 6 Am. Jur. 2d, Assault & Battery § 105, p. 91.

Further, rules regarding self-defense do not normally differ from homicide to battery cases.

> "It is one of the elementary principles of natural law, and has universally been adopted by positive law, that in an appropriate case self-defense may be a justification of what otherwise would amount to a crime or a tort. The general rules of criminal law governing self-defense apply, of course, in prosecutions for assault and battery . . . ." 6 Am. Jur. 2d, Assault & Battery § 69, p. 63.

We hold that the trial court erred when it admitted, over objection, independent evidence of the victim's reputation for peacefulness when the victim's character or a trait of his character was not in issue.

The defendant presented evidence upon his claim that he acted in self-defense. We have reviewed the record and conclude that the evidence regarding the issue of who was the aggressor on the night of the fight was equally weighed. Under these circumstances, the erroneous admission of independent evidence of the peaceable nature of the victim, when his character had not been put in issue, prejudiced the substantial rights of the defendant. We, therefore, reverse the Court of Appeals and the district court. The defendant's conviction is reversed, and the case is remanded for further proceedings. Due to this disposition, we have no need to address the remaining issues on appeal.

Reversed and remanded.