No. 30,414.

MAUDE HANCOCK, *Appellee*, v. J. A. BEVINS, doing business as THE RED TOP TAXI, *Appellant.*

(9 P. 2d 634.)

Opinion filed April 9, 1932.

*P. E. Nulton, G. L. Stevenson*, both of Pittsburg, and *Ray Bond*, of Joplin, Mo., for the appellant.

*D. G. Smith*, of Girard, and *Thomas W. Clark*, of Pittsburg, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an appeal by the defendant in an action for damages for injuries received by the plaintiff while riding in the defendant's taxicab across the railroad track at a high rate of speed on account of the negligence of the defendant driver in failing to

look ahead and observe the condition of the crossing, whereby she was thrown to and against the top of the taxicab and her head, neck and spine were seriously injured.

Two errors are especially assigned and urged: The first is the refusal of the trial court, in an effort to impeach the plaintiff, to permit the shorthand reporter to read certain questions asked the plaintiff and answers given by her in the taking of her deposition by the defendant several months before the trial; the second error assigned and urged was the refusal of the trial court, at the request of the defendant, to return the jury to make two of their answers to special questions more definite and specific.

The statute of limitations was involved and a serious conflict existed as to the time of the injury, and therefore the impeaching proof and the specific answer to one of the special questions became very important in the case.

It was alleged in the petition that the injury in the taxicab occurred "on or about the 6th day of September, 1926," and the petition was filed August 13, 1928. There was strong evidence showing that the accident happened on August 10, 1926, which would bar the action. Against that was the testimony of the plaintiff and her witnesses that it occurred either on September 6 or September 7, 1926. The special questions and the answers thereto, including the one answering as to the time of the occurrence, are as follows:

"Q. 1. State whether or not plaintiff received an injury while riding in the car of the defendant. A. Yes.

"Q. 2. If you answer question No. 1 'Yes,' or in the affirmative, state on what 'date she received said injury. A. On or about September 6, 1926.

"Q. 3. If you answer question No. 1 'Yes,' or in the affirmative, state of what said injury consisted. A. Head, neck and spine.

"Q. 4. If you answer question No. 1 'Yes,' or in the affirmative, state whether or not said injuries were caused by defendant's negligence. A. Yes.

"Q. 5. If you answer question No. 4 'Yes,' or in the affirmative, state what act, or acts, of negligence caused plaintiff's injury, if any. A. Careless driving."

About a month after the action was commenced the defendant served the plaintiff with a notarial subpoena in Kansas City, Mo., to take her deposition in the case under R. S. 60-2821. She was sworn and answered many questions, which testimony was transcribed by the stenographer and filed as a deposition in the case, but was not introduced or read in evidence by either party, but on cross-examination of the plaintiff during the trial she was asked

certain impeaching questions as to her having given certain answers to certain questions asked her in this earlier examination. She answered most of those questions by saying, "I don't remember." As to the question of greatest importance here, her answer was—

"I don't remember—I don't remember answering that way, no—I don't remember that question."

Two preliminary features contained in the objection of the appellee, which may have been considered by the trial court as serious, are that her answers were not in the negative and therefore could not be a basis for impeachment, and that the defendant had made the plaintiff his own witness and therefore he could not impeach his own witness. Neither of these objections should have been sustained. In a very early decision, after stating the effect of an answer "yes" in the previous examination and an answer "no," it further states—

"If he says he does not recollect, then you may give evidence on the other side, to prove that he did say what is imputed to him; and to that extent, the force of his testimony is weakened. If the rule were not so, you could never contradict a witness who said he could not remember." (*Lewis v. State,* 4 Kan. 296, 310.)

The taking of the deposition of a witness is not the test which determines whose witness he is. It is the using of the deposition. In this case neither party used the deposition, but she, the plaintiff, became a witness on the trial on her own behalf.

"If A had read the deposition, in whole or in part, he would clearly have made the witness his own, and B's subsequent use of it would not prevent B from impeaching the deponent. But the difficulty is, where A, the taker, has made no use of the depositions, that he can hardly be said to have made the witness his own." (2 Wigmore on Evidence, 2d ed., 285. See, also, *Johnson v. Marriage,* 74 Kan. 208, 86 Pac. 461.)

Another feature contained in the objection of the plaintiff to this impeaching testimony offered by the defendant from the shorthand notes of the stenographer taking her testimony was that the evidence offered was not in fact impeaching, not being contradictory of or inconsistent with her evidence during the trial. She had testified on the trial that the injury occurred on September 6 or possibly September 7, 1926. The court sustained the objection of the plaintiff to the following impeaching question asked the stenographer by the defendant:

"State to the jury whether or not the following question was asked and the following answer given by Mrs. Hancock: 'When did the accident involved in

that case happen?' Answer: 'Well, I don't remember just exactly what the date was. I would have to look at the information my attorney has, Mr. Smithson.' "

Does this answer, said to have been given by her at that time, contradict the testimony given by her on the trial as to the date of the accident? We think not. Neither can it be said even to be inconsistent with her present answer as to date. The most that could be said concerning the difference between them would be that her memory should have been better as to the exact time of the occurrence at the earlier occasion rather than the later, but as against that, she may have looked at the information in the hands of her attorney before taking the witness stand at the time of the trial and thus revived her recollection and ability to give a definite date which her earlier answer indicates she could have done by looking up the information.

"In the present mode of impeachment, there must of course be a real inconsistency between the two assertions of the witness. The purpose is to induce the tribunal to discard the one statement because the witness has also made another statement which cannot at the same time be true. Thus, it is not a mere difference of statement that suffices; nor yet is an absolute oppositeness essential; it is an inconsistency that is required." (2 Wigmore on Evidence, 2d ed., 491.)

In the case of *State v. McGaffin,* 36 Kan. 315, 13 Pac. 560, it was said that the proper and effective mode of impeachment was—

". . . by showing that he had made statements out of court and soon after the occurrence contradictory to those made by him on the witness stand." (p. 321. See, also, *State v. Swartz,* 87 Kan. 852, 126 Pac. 1091.)

On this account we think there was no error in sustaining the objection to this impeaching testimony.

Other impeaching testimony was offered by the same witness, but it concerned matters as to where she was intending to go in the taxicab and calling a doctor after the accident, about which matters there is no particular conflict and they contribute very little, if anything, toward the vital question of the date of the accident.

Appellant complains of the refusal of the trial court to return the jury for more specific answers to the second and fifth special questions.

It is said wide range is allowed in the matter of proof to meet an allegation of an occurrence on or about a date named, and that a very narrow range here of about three weeks would effect a bar of the statute of limitations. This reasoning would be strong if one

set of dates would extend over to or connect with the other. In this case the conflicting evidence centers around either one or the other of two very definite times, either September 6 or 7, or August 10. There is no evidence as to any intermediate dates. One witness said it was in August, without giving any more definite date. Under this particular situation as to all the evidence on dates, the indefinite nature of the answer to the special question, that the occurrence was on or about September 6, cannot possibly extend to August 10, but at the most might include under the testimony September 7, which would not reach the question of the statute of limitations.

The other indefinite answer criticized is where the jury found the negligence of the defendant to be "careless driving." The allegations of the petition as to negligence were:

". . . driving and operating said taxicab at a rate of speed of about thirty-five or forty miles per hour, and negligently and carelessly failed to look ahead and observe the condition of the highway, and said defendant failed and neglected to have said taxicab under control so that it could be stopped by brakes or otherwise."

It was also stated that the railroad crossing at which the accident was alleged to have occurred was maintained at a grade above the grade of the highway. The negligence under such allegations could consist of too great a speed at such a crossing, failure to look ahead and observe the condition of the highway at the crossing and to have the taxicab under control by use of brakes or otherwise, all of which is summed up in the expression "careless driving." The answer, of course, should properly have named one or more of the items above enumerated as alleged, if supported by the evidence, but by applying to these two words their everyday significance they convey to us a plain and unmistakable intention to embody the elements of speed in driving without looking ahead to observe the dangers. There was some evidence to sustain these allegations, and we think it was not prejudicial error to refuse to send the jury back for a more definite and specific answer to this question.

The judgment is affirmed.