No. 42,990

STATE OF KANSAS, *Appellee*, v. WESLEY COOPER MILES, SR., *Appellant*.

(382 P. 2d 307)

Opinion filed June 8, 1963.

*Don Wyman*, of Hutchinson, waived oral argument and was on the briefs for the appellant.

Michael E. Chalfant, county attorney, argued the cause and Richard J. Rome and Raymond F. Berkley, assistant county attorneys, were with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: The appellant was convicted of statutory rape. The object of appellant's attention was his own stepdaughter, thirteen years of age. It is conceded that Wesley Cooper Miles, Sr., normally slept with his wife Julia Ann and also with Dora Charlene Ogle, his wife's daughter.

Dora testified that on the morning of July 28, 1961, she was occupying the bed with only her stepfather and that both were nude. That she had sexual intercourse with her stepfather on the bed and that her mother had been present at the time the act was done.

It is true that on cross examination, Dora admitted that she had told different stories about this matter at different times.

Although there seems to be no doubt that Julia Ann, wife of defendant, signed the complaint against her husband, she testified in his defense at the trial.

Detective Mangels of the police force was questioned as follows:

"Q. Could you tell the Court and jury your conversation in the afternoon of the 28th of July with Mr. Miles in that squad room?

"A. My conversation with Mr. Miles was over a statement that I had read that had been given me by Dora, his stepdaughter, and I read this statement and in the presence of both Mr. Miles and Mrs. Miles and Dora Ogle and asked Dora if it was a true statement and she verified it was and asked Mr. Miles what he had to state in regards to these accusations that the girl had made.

"Q. What was his reply?

"A. He went on to say that previous to them coming to Hutchinson, shortly before coming to Hutchinson, why—

"MR. WYMAN: Objection, I don't think this is responsive.

"THE COURT: Yes, I think that is responsive, the judgment will be overruled

"(Witness continues with his answer:)

"—He advised that he and his wife had previously lived in Great Bend and that she had, Mrs. Miles, had talked to him about when her daughter could come to live with them. Whether it would be permissible, if he would go along with the idea of rubbing her body and having intercourse with this daughter as this is, had helped her considerable and he advised that whatever, when the daughter come to live with them, why he, that he had committed these acts of intercourse with his stepdaughter, Dora Ogle. At this time he was asked why he hadn't admitted these things earlier in the day when he had been asked about having intercourse with the stepdaughter

and he said, that the reason he hadn't admitted these before was he didn't want to get his wife Julia involved in this. Since this girl had admitted now what he, that he figured he could go on and wouldn't be responsible for her becoming involved.

"Q. And he did not make this statement until after you read the statement of Dora Charlene Ogle, is that correct?

"A. That is right."

The appellant argues three matters as error. The first proposition is that the assistant county attorney offered himself as a witness. Appellant objected to Mr. Smith being allowed to testify as to the statements made by Julia Ann Miles. The court on finding that two detectives were also present when Julia made her statement sustained the objection and excluded Mr. Smith as a witness. It had been said that Mr. Smith would have withdrawn from the case as an attorney as soon as he gave his testimony. But the rule is that the attorney must withdraw before testifying, and the court was quite right in excluding Mr. Smith as a witness.

Appellant now objects that Mr. Smith was allowed to make part of the argument at the close of the case. The trial court held that he could do so, because he had not been a witness nor had he testified to a material matter. The rule is quite clear in this state that when an attorney finds he must testify for his client or against the opposing party, he must withdraw immediately as attorney. In the case of *State v. Bechtelheimer*, 151 Kan. 582, 100 P. 2d 657, we had an illustration which is quite similar to the case at bar. In the Bechtelheimer case, the late Elisha Scott offered to testify on behalf of his own client. However, the court refused to allow him to testify as long as he was in the case as an attorney. Mr. Scott did not testify although the defendant in that case had three other attorneys. Mr. Scott continued to act on behalf of his client and was chief counsel on the appeal to this court. No one argued on the appeal that Mr. Scott was not eligible to continue to act in the case since he had not been a witness although he had endeavored to be. Mr. Scott did not offer to withdraw as counsel. We think Mr. Smith was no more a witness in this case than Mr. Scott was in the cited case. We find no error here.

Appellant's next objection is that statements of Dora and of appellant's wife were read to the jury along with certain statements by the appellant. We have quoted some of the statements above.

In the case *State v. Cruse*, 112 Kan. 486, at page 494, 212 Pac. 81, it was said:

"Another witness testified that he and the defendant took defendant's mother home in a car the morning after the tragedy and that the following conversation was had in defendant's presence:

" 'Q. Did you say you took Mrs. Cruse, the mother of Mr. Cruse, home that morning, did you? A. Yes, sir.

" 'Q. Now, was Mr. Cruse with you at that time? A. Yes, sir.

" 'Q. Mr. Cruse went home with his mother? A. Yes, sir.

" 'Q. Was there any conversation took place between any of you when you were taking them home that morning? A. Yes, sir.

" 'Q. What was that conversation? . . . A. Mrs. Cruse says, "It scared me when George called me; I could not imagine what had happened, because you know they led such a stormy life."

" 'Q. Was Mr. Cruse present? A. Mr. Cruse was in the car.'

"[Objection—overruled.]

"This evidence falls within the rule that statements to the prejudice of an accused, made in his presence and which he tolerates without resentment, explanation or denial, are ordinarily admissible as some evidence of his consciousness of guilt. The leading authorities on this subject are elaborately discussed in State v. Mortensen, 26 Utah, 312, 73 Pac. 562, and section 4 of the syllabus therein reads:

" 'Defendant was suspected of having killed deceased, and after deceased's body had been dug up, and while it was lying in a patrol wagon, deceased's father said, while defendant was within six or eight feet from him and near the vehicle, as though talking to the body, "He murdered you for a receipt that was on your body representing $3,800, and you never ran away, nor he never gave you a dollar." Held, in a prosecution of defendant for the homicide, that such statement by the father and the fact that defendant said nothing in reply, but hung his head and looked on the ground, was admissible as an admission indicative of guilt.'

"See also, 16 C. J. 631-633; 2 Wigmore on Evidence, pp. 1253-1261.

"This evidence as well as the testimony that defendant had remained silent when reproached and chided by his wife's relatives for mistreatment of his wife, for beating her and kicking her out of bed, was admissible under the rule announced in The State v. O'Neil, 51 Kan. 651, 33 Pac. 287:

" 'Ill treatment and previous assaults by husband on wife are admissible to prove motive, in cases of marital homicide.' "

See State v. Boswell, 119 Kan. 670, 240 Pac. 848; and also State v. Davis, 133 Kan. 571, 300 Pac. 1114. The point here involved is covered in the second paragraph of the syllabus and corresponding part of the opinion in the Davis case. And further see annotation 80 A. L. R. 1235.

Lastly, appellant objects to the testimony of Garland E. Lemley, who was connected with a private investigating company. He testified that he talked with Julia Miles on the morning of the 28th of July. He said he noticed a large bruise on her left arm, extend-

ing almost from the elbow to the shoulder. He stated that Julia said she received the bruise from her husband, which was contrary to the evidence she gave when she testified in defense of her husband at which time she said the police twisted her arm and made her sign the complaint in this case. As to a rebuttal witness, we believe it was permissible to admit the above statement. In *Williams v. Hendrickson*, 189 Kan. 673, at p. 677, 371 P. 2d 188, it is said: "It is a well-established rule in this jurisdiction that prior statements must be inconsistent with the witness' testimony for purposes of impeachment. (*Hancock v. Bevins*, 135 Kan. 195, 9 P. 2d 634.)"

We have dealt with appellant's specifications of error and find that the trial court committed no reversible error. We must hold that the judgment of conviction is affirmed. It is so ordered.