No. 87,805

STATE OF KANSAS, *Appellee,* v. EDWARD L. ATKINSON, a/k/a EDDIE ATKINS, *Appellant.*

(80 P.3d 1143)

Opinion filed December 19, 2003.

*Korey A. Kaul,* assistant appellate defender, argued the cause, and *Peter Maharry,* assistant appellate defender, was on the brief for the appellant.

*Lesley A. Isherwood,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, were with her on the brief for appellee.

*Per Curiam*: Edward Atkinson was convicted, following a jury trial, of rape under K.S.A. 21-3502(1)(a). On direct appeal, Atkinson argues the trial court erred in applying the Kansas rape shield statute, K.S.A. 21-3525, in a manner which violated his rights under the Due Process and Confrontation Clauses of the United States and Kansas Constitutions. The district court prohibited Atkinson from cross-examining the complaining witness regarding whether she had consensual intercourse with Atkinson the night before the alleged rape, which Atkinson argues explained the presence of sperm matching Atkinson's DNA; whether she and Atkinson had a prior sexual relationship; and her admitted falsehood to police regarding their relationship. Atkinson also argues his rights were violated when a nurse was asked to opine whether the complaining witness' physical injuries were consistent with the history she gave the nurse. Finally, he argues there was cumulative error.

The Court of Appeals rejected these arguments and affirmed his conviction. One judge dissented. This court granted Atkinson's petition for review pursuant to K.S.A. 20-3018(b).

We reverse, finding that the district court improperly applied the Kansas rape shield statute in a manner that infringed on Atkinson's constitutional rights to confront witnesses and present a defense. Because we reverse the conviction, we will not address Atkinson's other arguments.

L.P. testified that in the early morning hours on January 28, 2001, Atkinson, who L.P. knew, knocked at her front door. When Atkinson came inside, he told L.P. he wanted to make love. When she did not consent, Atkinson overpowered L.P., had intercourse with her, and left the house. L.P. called her boyfriend and police. Initially L.P. told police that she did not know Atkinson well and had never had sex with him. In a later interview with police, she admitted that she had a brief sexual relationship with Atkinson 6 months to a year previously. At the preliminary hearing, she admitted to the prior sexual contact in September 2000.

Approximately 2 hours after L.P. said the rape occurred, a sexual assault nurse examined L.P. The rape kit swab tested positive for semen. The nurse testified that the spermatozoa had deteriorated, which usually indicates the sperm were deposited in the vagina more than 6 hours previously. She testified that there is a possibility of collecting sperm up to 72 hours after it is deposited in the vagina. A forensic serologist who performed DNA testing on evidence collected in the case testified that Atkinson was a likely contributor of the sperm.

Pursuant to the rape shield statute, K.S.A. 21-3525, Atkinson filed a pretrial motion to admit evidence that he and L.P. had a previous sexual relationship and L.P. lied about that fact to police. The judge hearing the pretrial motion ruled that the evidence would not be admissible if used solely to detract from L.P.'s credibility and, therefore, Atkinson would not be allowed to cross-examine L.P. on any prior sexual relationship or otherwise raise the issues during the State's case. The judge also ruled that Atkinson would be allowed to testify that he had an ongoing sexual relationship with L.P. The judge reserved ruling on whether a corroborating witness, Joseph Rivers, would be allowed to testify.

Thus, at the trial, L.P. was not cross-examined regarding her relationship with Atkinson. She testified that she knew Atkinson

through his cousin whom she had dated. She indicated she saw Atkinson two or three times within a 6-month period. When asked when she had last seen Atkinson prior to January 28, she testified it had been about 2 weeks before that date. In cross-examination and at other stages of the trial, the defense focused on other inconsistencies between L.P.'s various statements to police and her testimony, such as whether she was asleep or on the phone when she heard Atkinson knock at the door, how far along her pregnancy was on the night of the rape, whether Atkinson had exposed himself to her before the rape, and other such details.

At trial, after the State had rested and prior to presenting the defense, Atkinson renewed his motion to admit the testimony about his prior sexual relationship with L.P. Initially, the district judge, who was different from the judge who heard the pretrial motion, ruled that no evidence, including the testimony of Atkinson, could be admitted regarding consensual sex with Atkinson on a previous date. The district court stated: "That's exactly what the rape shield statute is designed to prevent." A recess was taken so that defense counsel could explain the ruling to the defendant. Defense counsel then asked to address the court again and stated: "I believe I've neglected to explain to the Court one of the reasons to pierce the rape shield statute was to present evidence of why Mr. Atkinson's DNA was present as well as explain why semen was found in her rectum that Sunday morning." Immediately, the trial court stated: "All right. It's admissible through Mr. Atkinson for that purpose only. You can talk about the recent Friday night alleged consensual sex in order to explain those issues to the jury. We're not going into a prior sexual relationship beyond that."

Atkinson testified that on Friday evening, January 26, he had gone to L.P.'s house. L.P. let him in, they talked, and he drank a beer. They then had consensual sex. The next day, Atkinson called Joseph Rivers and bragged about having had sex with L.P. When Rivers did not believe him, Atkinson made a three-way call to L.P., who did not know Rivers was also on the line. During that call, L.P. acknowledged that the two had sex the night before. Rivers testified regarding the phone call in a manner consistent with Atkinson's testimony.

The defense also called several alibi witnesses to testify about Atkinson's whereabouts on the night of the rape. Atkinson denied having been at L.P.'s home on the night of the rape and denied ever forcing her to have sex with him.

On direct appeal, a majority of the Court of Appeals panel affirmed Atkinson's conviction with then Judge, now Justice, Carol Beier dissenting. *State v. Atkinson*, No. 87,805, unpublished opinion filed April 4, 2003. The majority found that the trial court did not err in excluding evidence that L.P. had consensual sex with Atkinson 4 months prior to the alleged rape, concluding the evidence was not relevant to the issues of consent and credibility since Atkinson denied having sexual intercourse with L.P. or even having been at her home on the night in question. The majority also found that because 4 months had passed since the prior incident, it did not have sufficient proximity to be considered relevant and its exclusion was proper.

Regarding Atkinson's argument that the trial court erred in preventing him from cross-examining L.P. about the prior sexual contact the night before the alleged rape, the majority found no abuse of discretion, reiterating that Atkinson consistently claimed he did not have sex with L.P. on January 28 and offered alibi witnesses to explain his whereabouts on that night. The majority noted that both Atkinson and Rivers had been allowed to testify about the prior incident in order to explain why Atkinson's DNA was found on L.P.; therefore, Atkinson had been properly allowed to present his defense theory. Because evidence of prior consensual sex does not imply consent during a subsequent encounter, the majority found no error in the trial court's decision to limit cross-examination of L.P. Slip op. at 5-6.

Because Atkinson failed to make a contemporaneous objection at trial, the Court of Appeals declined to review the merits of the issue of whether the trial court erred in allowing the sexual assault nurse to testify that her findings upon examining L.P. were consistent with L.P.'s version of events. Finally, the Court of Appeals found no cumulative error.

Judge Beier's dissent focused on the evidence that L.P. at first denied any prior sexual activity with Atkinson but later admitted

to a consensual encounter. She found that evidence would have been relevant, stating: "The witness' choice to lie initially about the nature and degree of her relationship with the defendant naturally would lead to many relevant questions, including those focused on her credibility but far from limited to them." Judge Beier concluded that the trial court's "refusal to permit cross-examination of the complaining witness on the defendant's complete theory of an ongoing consensual sexual relationship and on her earlier lie to law enforcement and the court's wholesale exclusion of evidence from any source regarding the earlier sexual encounter constituted prejudicial error."

## Standard of Review

Both the trial court's decision to exclude the evidence and its decision to limit cross-examination of L.P. must be reviewed under an abuse of discretion standard. See *State v. Canaan*, 265 Kan. 835, 853, 964 P.2d 681 (1998). "Discretion is abused only when judicial action is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the trial court's view." 265 Kan. at 853. Further, the scope of cross-examination is subject to reasonable control by the trial court. *State v. Pearson*, 234 Kan. 906, 923-24, 678 P.2d 605 (1984). However, where, as here, the court is reviewing a constitutional challenge to the admission of evidence, the appellate court applies the federal constitutional rule. Under that rule, an error may not be held to be harmless unless the appellate court is willing to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. *State v. Lyons*, 266 Kan. 591, 598, 973 P.2d 794 (1999).

The district court and Court of Appeals majority found that the outcome of this issue was controlled by the rape shield statute, K.S.A. 21-3525, which provides in relevant part in subsection (b):

"[I]n any prosecution to which this section applies, *evidence of the complaining witness' previous sexual conduct with any person including the defendant shall not be admissible, and no reference shall be made thereto* in the presence of the jury, except under the following conditions: The defendant shall make a written motion to the court to admit evidence or testimony concerning the previous sexual conduct of the complaining witness. The motion must be made at least seven days before the commencement of the trial unless that requirement is waived by the

court. The motion shall state the nature of such evidence or testimony and its relevancy and shall be accompanied by an affidavit in which an offer of proof of the previous sexual conduct of the complaining witness is stated. The motion, affidavits and any supporting or responding documents of the motion shall not be made available for examination without a written order of the court except that such motion, affidavits and supporting and responding documents or testimony when requested shall be made available to the defendant or the defendant's counsel and to the prosecutor. The defendant, defendant's counsel and prosecutor shall be prohibited from disclosing any matters relating to the motion, affidavits and any supporting or responding documents of the motion. The court shall conduct a hearing on the motion in camera. At the conclusion of the hearing, *if the court finds that evidence proposed to be offered by the defendant regarding the previous sexual conduct of the complaining witness is relevant and is not otherwise inadmissible as evidence, the court may make an order stating what evidence may be introduced by the defendant and the nature of the questions to be permitted.* The defendant may then offer evidence and question witnesses in accordance with the order of the court." (Emphasis added.)

As we have previously noted: "In the rape shield act the legislature sent a clear message to the courts that a rape victim's prior sexual activity is generally inadmissible since prior sexual activity, even with the accused, does not of itself imply consent to the act complained of." *State v. Stellwagen*, 232 Kan. 744, 747, 659 P.2d 167 (1983). However, the rape shield statute does allow evidence of a victim's prior sexual conduct if it is proved relevant to any fact at issue, such as the identity of the rapist, the consent of the victim, and whether or not the defendant actually had intercourse with the victim. *State v. Bressman*, 236 Kan. 296, 300, 689 P.2d 901 (1984).

Because relevant evidence may be admitted, the statute does not violate the defendant's rights to confront and cross-examine witnesses or to present witnesses as guaranteed by the Sixth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights. *In re Nichols*, 2 Kan. App. 2d 431, 433-34, 580 P.2d 1370, *rev. denied* 225 Kan. 844 (1978).

"The Kansas [rape shield] statute merely serves to focus both judges' and attorneys' attention upon the fact that the victim's prior sexual activity is not generally relevant, reminding them that a victim's lack of chastity has no bearing whatsoever on her truthfulness and generally has no bearing on the important issue of consent." 2 Kan. App. 2d at 434.

In this way, the rape shield statute serves the State's interest by recognizing "that a rape victim suffers considerable trauma from the incident and that adding to her trauma by permitting untrammeled examination of the intimate details of her life is unnecessary" and through this protection seeks to encourage rape victims to report and aid in the prosecution of the crime. 2 Kan. App. 2d at 435; see *State v. Arrington*, 251 Kan. 747, Syl. ¶ 1, 840 P.2d 477 (1992).

However, such policy interests "cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Davis v. Alaska*, 415 U.S. 308, 320, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974). The right to confront witnesses afforded by the Sixth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights is fundamental. *State v. Blue*, 225 Kan. 576, 579, 592 P.2d 897 (1979). However, that right is not unlimited:

" 'The defendant's Sixth Amendment rights are subject to the same evidentiary rules as all other evidence. The threshold question for the admissibility of evidence is relevancy. The Kansas [rape shield] statute does not undermine the defendant's right to present relevant evidence regarding the victim's prior sexual conduct. It only requires that there be a pretrial determination of the relevancy of that evidence. . . .

" 'Since the statute permits the admission of the evidence when it is truly relevant, excluding it only when and to the extent that it is irrelevant, the statute is constitutional. It is well suited to protecting the defendant's constitutional rights, the victim's interest in keeping her private life private, and the state's interest in conducting rape trials without the obstruction of irrelevant and inflammatory evidence. The pretrial mechanism created by [the rape shield statute] for determining the relevance of such evidence is admirably suited to striking a balance between these conflicting interests.' " *State v. Blue*, 225 Kan. at 579-80 (quoting *In re Nichols*, 2 Kan. App. 2d at 434-35).

Thus, the statute does not create an absolute prohibition against evidence of the victim's prior sexual misconduct or against cross-examination of the victim. Rather, evidence of prior sexual conduct may be admitted upon determination that it "is relevant and is not otherwise inadmissible as evidence." K.S.A. 21-3525. We have previously recognized, for example, that "[t]he statute does not preclude the admission of evidence that another person may have

been guilty of the alleged sexual abuse or relevant evidence that impeaches the credibility and testimony of a witness." *Arrington*, 251 Kan. at 750.

Evidence that the parties had intercourse the night before the alleged rape was highly relevant as an explanation of why Atkinson's DNA matched the sperm found during the rape examination. Atkinson's version of events, placing the intercourse more than 24 hours before the sexual assault examination, was consistent with the nurse's observation that the spermatozoa had deteriorated, which she explained usually indicates the sperm were deposited in the vagina more than 6 hours previously. We disagree with the Court of Appeals' conclusion that allowing Atkinson to introduce this evidence through his and Rivers' testimony satisfied his right to present a defense and to confront witnesses. The ruling prevented Atkinson from cross-examining L.P. and other witnesses about the possibility of a consensual sexual act on the previous night. As the United States Supreme Court has noted:

" 'The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or for being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.' 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940). . . .

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis*, 415 U.S. at 315-16.

Atkinson was denied this right with regard to an issue which was critical to the case. In the pretrial ruling, the district court did not explain why Atkinson could testify regarding the events of Friday night but he could not cross-examine L.P. about them. Although the rape shield statute does recognize the court's discretion to "make an order stating what evidence may be introduced by the defendant and the nature of the questions to be permitted" (K.S.A. 21-3525), the district court and this court on review must balance this discretion against the constitutional rights of the defendant.

As the United States Supreme Court noted in *Delaware v. Van Arsdall*, 475 U.S. 673, 89 L. Ed. 2d 674, 106 S. Ct. 1431 (1986), the trial judge's discretion to impose reasonable limits upon cross-

examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant does not extend so far as to foreclose *all* inquiry on a topic which is so critically relevant to the defense theory of the case. The Supreme Court discussed the test to be applied in determining if a trial court's ruling limiting cross-examination of a witness resulted in a Confrontation Clause violation:

"The State somewhat tentatively suggests that a defendant should have to show 'outcome determinative' prejudice in order to state a violation of the Confrontation Clause: Unless the particular limitation on cross-examination created a reasonable possibility that the jury returned an inaccurate guilty verdict, that limitation would not violate the Confrontation Clause. We disagree. While some constitutional claims by their nature require a showing of prejudice with respect to the trial as a whole, see, *e.g., Strickland v. Washington,* 466 U.S. 668 [,80 L. Ed. 2d 674, 104 S. Ct. 2052] (1984) (ineffective assistance of counsel), the focus of the Confrontation Clause is on individual witnesses. Accordingly, the focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial. It would be a contradiction in terms to conclude that a defendant denied any opportunity to cross-examine the witnesses against him nonetheless had been afforded his right to 'confront[ation]' because use of that right would not have affected the jury's verdict. We think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' *Davis v. Alaska, supra,* [415 U.S., at 318, 94 S. Ct., at 1111.]" *Van Arsdall,* 475 U.S. at 679-80.

Atkinson has met that burden and established a violation of the Confrontation Clause. The physical evidence of Atkinson's DNA was very damning. To prevent Atkinson from cross-examining L.P. regarding the events of Friday evening deprived Atkinson of his right to confront the accusing witness on this key fact. Atkinson was entitled to have his counsel expose this issue so that the jury, as the sole trier of fact and credibility, could appropriately assess L.P.'s reaction to the defense theory of the case and draw inferences relating to the reliability of the witnesses.

As previously noted, once we have determined that there is a constitutional violation, we apply the federal constitutional harmless-error analysis. In *Van Arsdall*, the United States Supreme Court explained application of the rule in the context of a Confrontation Clause issue:

"The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." 475 U.S. at 684.

In this case, to assume that the damaging potential of cross-examination was fully realized would mean that L.P. would admit to having had consensual sex with Atkinson on Friday night. In turn, this admission would have explained the presence of his DNA in a manner consistent with the scientific evidence regarding the deteriorated condition of the spermatozoa. While other physical evidence corroborated L.P.'s version of events, her testimony and credibility were key to the overall strength of the prosecution's case. Under these circumstances we cannot say that the error was harmless beyond a reasonable doubt. Therefore, we hold that the limitation on Atkinson's right to cross-examine L.P. regarding the events of Friday night was reversible error.

Further, Atkinson argues that evidence of an ongoing relationship, even though sporadic, was an integral part of and essential to the plausibility of his defense. In support of this argument, Atkinson cites *State v. Bradley*, 223 Kan. 710, Syl. ¶ 2, 576 P.2d 647 (1978), where we held: "The exclusion of evidence, which is an integral part of the theory of defense, violates the defendant's fundamental right to a fair trial." *Bradley* involved a murder which the State argued was part of a burglary and the defendant argued was committed in self-defense. The State filed a motion in limine to exclude any reference to a prior incident where the decedent, unprovoked and intoxicated, had fired a shot at the defendant while

the defendant lay in bed. Charges were brought against the decedent, who then failed to appear for court. The defendant sought to establish that fear of being turned in to authorities by the defendant motivated the decedent to attack. The trial court granted the motion in limine, prohibiting evidence of the incident. On appeal, this court determined that the evidence was not admissible on the issue of bad character but was admissible on the basis of intent and motive. 223 Kan. at 713. This court concluded:

"The right to present one's theory of defense is absolute. The trial court improperly used the evidentiary rules of establishing character to exclude relevant and material information pertaining to the defense.

". . . We have no hesitancy in finding that the defendant's fundamental right to a fair trial was violated." 223 Kan. at 714.

Judge Beier, in dissenting from the Court of Appeals decision, reached the same conclusion in this case:

"This case departs from the expected norm of irrelevance and inadmissibility because the complaining witness at first denied any prior sexual activity with the defendant. Indeed, at first she minimized even their previous platonic contact. . . .

"The witness' choice to lie initially about the nature and degree of her relationship with the defendant naturally would lead to many relevant questions, including those focused on her credibility but far from limited to them."

We agree and conclude that the evidence of the inconsistent statements should have been introduced.

K.S.A. 60-420 provides:

"Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility."

Applying this provision in *State v. Blue*, 221 Kan. 185, 558 P.2d 136 (1976), we upheld the admission of evidence, though collateral in nature and ordinarily not admissible. The case was an appeal from a conviction for forgery wherein defendant Blue had presented a forged drug prescription to a pharmacy in Wichita. This occurred during the afternoon of July 7, 1975. Defendant and a corroborating witness testified they had been at home all morning on July 7, 1975. The State offered evidence in rebuttal that the two

of them had, in fact, visited another pharmacy during the morning hours and had obtained a quantity of drugs with a valid prescription. The trial court ruled the evidence, though collateral in nature and ordinarily not admissible, was admissible as rebuttal evidence going to credibility. We stated:

"The rebuttal evidence was competent to show that the testimony of [the defendant and his witness] that they did not visit any other pharmacy that day was false; it was thus admissible to attack their credibility under K.S.A. 60-420." 221 Kan. at 188.

In *State v. Nixon*, 223 Kan. 788, 576 P.2d 691 (1978), the defendant appealed his convictions of rape and sodomy. The defendant admitted that the sexual acts took place but contended that after 2 or 3 hours of mutually enjoyable lovemaking the complaining witness "went crazy." 223 Kan. at 790. Thus, the primary factual issue was consent. During the State's examination of the complaining witness there was mention, in both questions and answers, of the use of marijuana by both parties, and the witness volunteered information about the use of "downers." In cross-examination, the witness was asked if she knew Kenneth Sick. Without an objection to the question being stated, the witness replied, "I've never heard of him." 223 Kan. at 791. The defense called Sick as a witness. Sick testified he was acquainted with the complaining witness, had seen her on at least three occasions, and on one occasion had dated her. The State objected to further questioning and, through proffer, it was made known that the defendant intended to elicit testimony that Sick had observed the complaining witness sell drugs. The trial court ruled that the sale of drugs was not a crime of dishonesty and the evidence could not be admitted. The defendant argued that he was not attempting to show traits of the complaining witness' character or specific instances of conduct to prove character, but to establish that she was not being truthful in her testimony. We reviewed K.S.A. 60-420 and related evidentiary rules and prior case law, including some cases holding that once inadmissible facts had been elicited, similar inadmissible evidence could be elicited to rebut the evidence. In *Dewey v. Funk*, for example, we stated: "[T]he opponent may reply with similar evidence whenever it is

needed for removing an unfair prejudice which might otherwise have ensued from the original evidence." 211 Kan. 54, 56, 505 P.2d 722 (1973). After this analysis in *Nixon*, we concluded that "under the peculiar facts and circumstances in this case, we find that it was error to preclude the defendant from presenting evidence in an attempt to prove that the prosecuting witness had been untruthful in her testimony." 223 Kan. at 794.

Similarly, under the unique facts of this case, we determine it was error to exclude evidence of L.P.'s inconsistent statements regarding the nature of her relationship or acquaintance with Atkinson even though the statements involved prior sexual conduct. Without question, L.P.'s credibility was the critical issue in the jury trial of this case, especially since the physical evidence cast doubt on her version of events. To foreclose Atkinson's cross-examination of her regarding these matters violated his fundamental right to a fair trial and requires reversal of his conviction.

Because we reverse on this issue, we need not address the issues of cumulative error or possible error in allowing the sexual assault nurse to testify that her physical findings upon examination were consistent with the victim's version of events, although we note in passing that this issue is similar to that decided in *State v. Clements*, 241 Kan. 77, Syl. ¶ 1, 734 P.2d 1096 (1987) (physician testified the victim's initial condition and progress in treatment were consistent with the events related to him by patient).

Reversed.

BEIER, J., not participating.

BRAZIL, S.J., assigned▮

LUCKERT, J., concurring in part and dissenting in part:

I concur with the majority's conclusion that Atkinson's constitutional right to confront witnesses was violated when the district

court prohibited Atkinson from cross-examining L.P. regarding the events of Friday night.

However, I dissent from the holding that the trial court erred in not allowing Atkinson to present evidence and cross-examine L.P. regarding her inconsistent statements to police about previous consensual sex with Atkinson. Whether L.P. and Atkinson did or did not have sex 4 or 6 months earlier was not relevant to any issue in the case; therefore, L.P.'s inconsistent statements on the subject were not admissible. Contrary to the majority's reasoning, the statements were not admissible under K.S.A. 60-420, as a prior inconsistent statement, or under a theory that evidentiary rules should be stretched when at odds with the defendant's right to present a defense.

The right to present a defense "is subject to statutory rules and case law interpretation of rules of evidence and procedure." *State v. Thomas*, 252 Kan. 564, 573, 847 P.2d 1219 (1993). Applying this rule in *State v. Davis*, 256 Kan. 1, 883 P. 2d 735 (1994), this court found threats made by a codefendant which were subsequent to the crime were not relevant to the defendant's compulsion defense and were not admissible. We stated: " While the subsequent threats may make more probable the inference that Davis believed [his codefendants] would harm him if he did not participate, reasonable minds could differ as to whether the evidence was relevant. This court will not substitute its judgment for that of the trial court where the trial court used its discretion in excluding the evidence." 256 Kan. at 11.

The same conclusion applies in this case. Even if the evidence Atkinson seeks to admit may make more probable Atkinson's version of events, the evidence is not admissible under the rules of evidence and is not an integral part of the defense. Therefore, it was not an abuse of discretion to refuse to admit the evidence.

In seeking to admit L.P.'s statement that she had sex with Atkinson several months before the alleged crime, Atkinson argues that the prior sexual relationship was relevant because it established consent and it made his version of events more plausible. However, consent was not an issue in this case. Atkinson was charged based upon the events of Sunday morning and the jury

was instructed that one element that must be determined was that the acts occurred on January 28, 2001. Atkinson denied having any contact, much less sexual contact, with L.P. on that night. Even if L.P. consented to some act under Atkinson's theory, it was not the act with which he was charged.

This court, in applying K.S.A. 21-3525, the rape shield statute, has stated that a rape victim's prior sexual activity is "generally inadmissible since prior sexual activity, even with the accused, does not of itself imply consent to the act complained of." *State v. Stellwagen*, 232 Kan. 744, 747, 659 P.2d 167 (1983); see also *State v. Walker*, 252 Kan. 279, 286, 845 P.2d 1 (1993) (no claim of consensual sexual relations between victim and defendant on night in question; whether victim and defendant had engaged in consensual sexual relations on some prior occasion had no relevance to events of night in question and was properly excluded under rape shield statute).

Atkinson cites two cases in arguing that prior sexual relations can be relevant to the issue of consent. However, both are distinguishable. In *In re Nichols*, 2 Kan. App. 2d 431, 436, 580 P.2d 1370, *rev. denied* 225 Kan. 844 (1978), our Court of Appeals ruled that evidence of prior sexual relations was not relevant in that case because the rape allegedly occurred while defendant's friends were present. While the issue was made more difficult by an allegation that the two enjoyed rough sex, and the court conceded that "often the victim's prior conduct with the defendant would be relevant to the consent issue," the court found that the victim's prior consent to intercourse with the defendant alone did not imply consent to intercourse with defendant's friends or in their presence. 2 Kan. App. 2d at 436. There is no such unique circumstance in evidence in this case. If anything, the evidence was that L.P. was pregnant and in a relationship with another man; this makes even more questionable the inference that because she consented to sex several months earlier she consented again on the night in question.

Atkinson also cites *State v. Perez*, 26 Kan. App. 2d 777, 781, 995 P.2d 372 (1999), *rev. denied* 269 Kan. 939 (2000), in which the Court of Appeals reversed a rape conviction because the district court excluded evidence of the victim's sexual intercourse with oth-

ers on the same evening. The court noted close time proximity (all acts occurred at the same party); a distinctive pattern (the victim had sex with the others while the defendant observed, giving credence to the defendant's version that there was a witness to his sex act with the victim); and inconsistencies in the victim's testimony which went to credibility (in initial statements the victim was unsure whether there was penetration). There are no such factors in this case to weigh in favor of admissibility.

Furthermore, the Court of Appeals majority was correct in ruling that the 4-month interval between the September incident and the alleged rape rendered that evidence too remote to be relevant. In support of this conclusion, the majority cited *State v. Montes*, 28 Kan. App. 2d 768, 774, 21 P.3d 592, *rev. denied* 271 Kan. 1040 (2001) (prior sexual encounter 1 to 2 months before rape too far removed to be relevant). Even if consent had been in issue, the fact that L.P. had consensual sex with Atkinson months prior to the alleged rape could have no possible bearing on whether she consented to sex on the night of the alleged rape.

Additionally, L.P.'s statements to police and testimony at the preliminary hearing are not admissible under Atkinson's second theory, that L.P.'s statements affect her credibility. The rules of evidence, specifically K.S.A. 60-422, prohibit their admission. The majority relied upon K.S.A. 60-420, which provides:

"Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility."

The majority does not consider the limitations of K.S.A. 60-421 or 60-422. K.S.A. 60-421 limits the admissibility of evidence of conviction of a witness for a crime when introduced to affect credibility and does not apply in this case. K.S.A. 60-422 provides further limitations on admissibility of evidence affecting credibility:

"As affecting the credibility of a witness (a) in examining the witness as to a statement made by him or her in writing inconsistent with any part of his or her testimony it shall not be necessary to show or read to the witness any part of the writing provided that if the judge deems it feasible the time and place of the writing and the name of the person addressed, if any, shall be indicated to the

witness; (b) extrinsic evidence of prior contradictory statements, whether oral or written, made by the witness, may in the discretion of the judge be excluded unless the witness was so examined while testifying as to give him or her an opportunity to identify, explain or deny the statement; (c) evidence of traits of his or her character other than honesty or veracity or their opposites, shall be inadmissible; (d) evidence of specific instances of his or her conduct relevant only as tending to prove a trait of his or her character, shall be inadmissible."

L.P.'s statements were a specific instance of conduct tending to show a lack of honesty or veracity and were, therefore, inadmissible because of the provisions of subsection (d). Furthermore, the statements were not admissible as a prior, inconsistent statement. It must be noted that the prosecutor did not ask L.P. whether she had ever had consensual sex with Atkinson. (Nor should the question have been asked even if the in limine ruling were not in place because the question sought irrelevant information.) Rather, L.P.'s prior statements were inconsistent *with each other*. In order to use prior statements for the purposes of impeachment, the prior statements must be inconsistent with the witness' testimony. *State v. Miles*, 191 Kan. 457, 461, 382 P.2d 307 (1963).

Also, it is well established that prior inconsistent statements are inadmissible if the subject matter of the statements is not relevant but relates to a collateral matter:

"Extrinsic evidence of prior inconsistent statements is inadmissible to impeach the statement of a witness on cross-examination as to a collateral matter. The matter involved in the supposed contradiction must be relevant to the issue being tried, for it is well settled that a witness may not be impeached by proof of statements as to matters not material." 81 Am. Jur. 2d, Witnesses § 932.

For example, in *State v. Dean*, 272 Kan. 429, 33 P.3d 225 (2001), we affirmed the trial court's refusal to allow the defendant to introduce evidence that a witness, who testified he sold the murder weapon to the defendant, had lied to police about where he originally purchased the weapon. The defendant argued the evidence was admissible to question the witness' credibility and truthfulness. In affirming this ruling, we stated that because the State had not introduced evidence about where the witness had purchased the gun, there was no need for the defendant to introduce rebuttal evidence that the witness had made a false statement about where

he purchased the gun. In doing so, we distinguished several cases where the witness who was being impeached had raised the collateral matter in testimony. See *State v. Nixon*, 223 Kan. 788, 576 P.2d 691 1978); *Dewey v. Funk*, 211 Kan. 54, 505 P.2d 722 (1973). In this case, L.P. did not raise the issue in her testimony, and the cases relied upon by the majority are therefore distinguishable.

In *Dean*, we also held that where the witness purchased the gun was not relevant. Finally, we held that the witness' prior false statements about where he purchased the gun were inadmissible under K.S.A. 60-422(d) as a specific instance of a prior bad act offered to attack the witness' credibility. 272 Kan. at 436.

Similarly, because evidence of a prior sexual relationship between L.P. and Atkinson was irrelevant, evidence that L.P. lied to police about that relationship was also irrelevant. Furthermore, L.P. did not testify at trial that she had never had consensual sex with Atkinson. If she had, that might have opened the door for Atkinson to present rebuttal evidence that she previously made an inconsistent statement. However, because L.P.'s previous statements to police were not truly inconsistent with her trial testimony, Atkinson had no basis to offer her previous statements for impeachment purposes. As in *Dean*, L.P.'s prior false statements to police were inadmissible under K.S.A. 60-422(d) as a specific instance of a prior bad act offered to attack L.P.'s credibility.

The trial court did not abuse its discretion in refusing to admit evidence of L.P.'s prior statements or preliminary hearing testimony regarding her prior consensual sex with Atkinson.