NOT DESIGNATED FOR PUBLICATION

No. 126,787

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TERRILL LaPAUL ANDREWS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Submitted without oral argument. Opinion filed August 23, 2024. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before GARDNER, P.J., GREEN and HILL, JJ.


PER CURIAM:  After an unsuccessful direct appeal of his sex-crime convictions, Terrill Andrews sought habeas corpus relief. In his K.S.A. 60-1507 motion, Andrews claimed that his trial counsel was ineffective and therefore his convictions should be overturned. The district court denied his motion, and he now appeals the denial of that motion.

In this appeal, Andrews argues that his trial counsel's performance was deficient because before his trial, his counsel failed to move to obtain and admit evidence of his

young victim's prior sex acts—thus avoiding the bar to the admission of such evidence found in the rape shield statute. Our review of the record leads us to conclude that Andrews' claim amounts to speculation about what his trial counsel could have discovered, and he fails to show how such evidence of any prior sexual activity by the 13-year-old victim was material and relevant to the issues in his trial. His claims fail to undermine our confidence in his convictions. Simply put, Andrews has not shown that his trial counsel's performance was deficient. We affirm.

*Andrews was convicted of several sex crimes.*

The court convicted Andrews of several sex crimes against three young girls at a bench trial. The facts of his case can be found in his direct appeal in *State v. Andrews*, No. 113,971, 2020 WL 1070355 (Kan. App. 2020) (unpublished opinion). We offer a condensed summary:

> "In early October 2013, A.C., a 13-year-old girl, and T.H., a 16-year-old girl, ran away together from a group home in Wichita. T.H. had previously met Andrews, who was 40 years old, and from October 10, 2013, until October 12, 2013, the two girls stayed at his residence. About October 12, 2013, A.C. left Andrews' residence and reported that Andrews had engaged in sexual intercourse with her on three occasions while at the residence." 2020 WL 1070355, at *1.

An investigation followed the report:

> "A.C. made this report to Tiffany Smith, a coordinator at the Open Arms Child Development Center in Wichita. Smith immediately contacted the Wichita Police Department and a criminal investigation was commenced. Officer Shawn Isham interviewed A.C. at her foster home. A.C. told Officer Isham that Andrews had raped her 'multiple times,' and described the location of his residence. At trial, A.C. testified to three separate occasions that Andrews raped her and touched her breasts." 2020 WL 1070355, at *1.

The victim was examined by a nurse:

> "Nurse Ruthann Farley testified at trial. Farley conducted a sexual assault medical examination on A.C. at a local hospital, corroborated the girl's testimony, and stated that A.C. had abrasions and lacerations indicative of blunt force trauma. Farley opined that these injuries appeared recent and were consistent with A.C.'s account that she had been raped." 2020 WL 1070355, at *1.

*We focus on Nurse Farley's testimony because it is the heart of this appeal.*

Nurse Ruthann Farley began examining A.C. on the evening of October 12, 2013. The exam continued into the early morning hours of October 13th. Nurse Farley examined A.C. head to toe, but A.C. would not consent to a genital exam. Nurse Farley obtained a history from A.C., wherein A.C. stated she had multiple previous sex partners. After the exam, a police officer took A.C. to McDonald's to get food and then to an interview with detectives. A.C. returned to the hospital the following day for the genital exam.

During cross-examination of Nurse Farley, Andrews' trial counsel asked leave of the court to question her about A.C.'s reported history of having multiple sex partners. The State objected on the basis of the rape shield statute. Trial counsel made a proffer of evidence, questioning Nurse Farley:

> "Q.     . . . And then below that you wrote what about multiple partners?
> "A.     I wrote that she had a history of multiple partners, sex partners.
> "Q.     And the words in your notes are 'had sex multiple partners;' is that right?
> "A.     Yes. That note was referring to that she has had sex in the past.
> "Q.     And that information, without knowing when the sex happened, can also provide an explanation for the physical evidence that you're testifying to about you observing on her on that day?
> "A.     It doesn't state when she last – I can't – I can't really answer that question.

3

"Q.      Okay. But if she's had sex with multiple partners and one of them was fairly recently, for example, that we don't even know who it is, that could provide an explanation for why she has a tear and an abrasion?

"A.      I suppose it's possible.

"Q.      Okay. And the same way you say it's consistent with my client's penis causing that damage, somebody else's could have?

"A.      Right. Something touched that area."

The attorneys questioned Nurse Farley on the timing of A.C.'s injuries:

"Q.  [Prosecutor:]  Miss Farley, based on your training and experience, when the vaginal area is injured how long do you expect to see those injuries? Can you give me a time frame?

"A.      Typically, with that area the healing occurs very, very quickly because it's very vascular in nature. So when we have a tear, it typically heals within maybe 24 hours or you start to see healing within a very quick time frame.

"Q.      Okay. And you told us that you first saw [A.C.] on the 12th and the 13th but she declined the vaginal exam, and then you did the vaginal exam on the 14th; is that correct?

"A.      That's correct.

"Q.      So the fact that you still saw injury on the 14th, what does that tell you?

"A.      That the injuries happened very recently and that they were fairly severe.

"Q.      Okay. And as to the multiple sex partners, she didn't give you any indication about when that may have happened, did she?

"A.      No. As far as I remember, that she had – that was in the past. I asked that for past medical history.

. . . .

"Q.  [Defense counsel:]  You never asked her if she'd had any other sexual contact with other people between the time you saw her and the time you did the exam?

"A.      Typically we ask that question, and it would be on my history notes which I have to go back to. So on step 13 we ask if there's any consensual intercourse in the last three days, and the mark – the box is check marked no. So that tells me that she did not have any sexual intercourse in the last three days.

"Q.      And that was asked, what, on the date of the second exam?

"A.      That was asked on the night that I initially saw her."

4

Nurse Farley later testified that injuries are typically seen "maybe 24 to 48 hours with healing in process after the injury has occurred." She did not see any evidence of healing in A.C.'s injuries.

*The criminal trial concluded with a guilty verdict.*

The district court ruled that the proffered evidence was "clearly covered by the rape shield statute." Because no written motion was filed in compliance with the statute, the evidence was inadmissible. Moreover, even if the motion had been filed, the proffered evidence was not relevant and would not survive scrutiny under the rape shield law. There was no evidence that A.C. had sex with anyone else between the time when officers were called and the genital exam.

In closing arguments, defense counsel argued—and the district court acknowledged—that based on Nurse Farley's testimony that the injuries typically begin healing within 24 to 48 hours of the injury and that there was no evidence of healing in A.C.'s case, A.C.'s injuries could have been more recent than the time A.C. was with Andrews.

*We look at all of the evidence of Andrews' guilt.*

Other evidence implicating Andrews was presented at trial. A detective testified that Andrews' cellphone contained a video of A.C. and T.H. naked in Andrews' shower. The video showed Andrews reflected in the mirror and recorded his voice as he spoke to the girls. Andrews' cellphone also contained a video of him engaging in oral sexual relations with T.H. Because T.H. was unavailable as a witness at trial, her preliminary hearing testimony was admitted into evidence. T.H. testified that she believed A.C. and that Andrews had sexual intercourse while they were staying at his residence.

5

Andrews was convicted of three counts of rape (A.C.); three counts of aggravated indecent liberties with a child (R.M.); and two counts of sexual exploitation of a child (T.H.).

As for the three counts of rape involving A.C., the trial court found it was undisputed that A.C. was only 13 years of age at the time of the events. The trial court found, "I don't think there can be much question that sexual intercourse occurred between Mr. Andrews and [A.C.]." The court found the sexual intercourse was established by A.C.'s testimony, by the sexual assault medical exam that found injuries consistent with intercourse, and by the preliminary hearing testimony of T.H. that was admitted into evidence. In conclusion, it found the evidence of guilt was strong.

The court sentenced Andrews as an aggravated habitual offender under K.S.A. 2013 Supp. 21-6626 to a controlling term of life in prison without parole. On direct appeal, a panel of this court affirmed Andrews' convictions. *Andrews*, 2020 WL 1070355, at *1, 34. The Supreme Court denied his petition for review.

*Andrews files this K.S.A. 60-1507 motion.*

Andrews filed this K.S.A. 60-1507 motion, arguing that his trial counsel was ineffective for failing to file a motion that would have allowed him to bypass the rape shield statute during the questioning of Nurse Farley at trial and for failing to investigate whether A.C. had sex with someone else. He claims that due to the lapse in time between the alleged assault and A.C.'s vaginal exam, her injuries could have been caused by someone else.

At the evidentiary hearing on this claim, Andrews' trial counsel testified he did not file a motion to admit evidence under the rape shield statute because he would have needed some evidence to show that A.C. had sex with someone else and that it could

6

affect the case, specifically that it occurred between her two medical exams because the injuries were very recent. He made the argument in his closing argument. Trial counsel also testified that a motion to admit evidence under the rape shield statute is not often filed.

The district court denied the motion, ruling that Andrews failed to establish trial counsel's failure to file the motion affected the outcome of his trial. The evidence Andrews sought to admit was not relevant and was barred by the rape shield statute. Whether A.C. had any other sexual experience was irrelevant to whether Andrews raped her. Nurse Farley testified A.C.'s injuries happened very recently. According to A.C.'s history note, she denied having any consensual intercourse in the last three days. Andrews presented no evidence that A.C. engaged in sexual relations between the time of Nurse Farley's examination and her return the next day for the genital examination. Further, during much of that time, A.C. was in the presence of law enforcement officers.

In this appeal, Andrews argues his trial counsel was deficient for failing to file a motion to allow A.C.'s sexual history into evidence and for failing to use discovery tactics that could have led to evidence that A.C. had sex with someone else. Andrews argues that this failure was prejudicial because trial counsel was unable to effectively argue that A.C.'s injuries were inflicted by someone else.

*Well-established rules guide us.*

After an evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law concerning all issues presented. See Supreme Court Rule 183(j) (2024 Kan. S. Ct. R. at 242). An appellate court reviews the court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of

the district court's ultimate conclusions of law is de novo. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

To be entitled to relief under K.S.A. 60-1507, the movant must establish by a preponderance of the evidence either: (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2023 Supp. 60-1507(b) (grounds for relief); Supreme Court Rule 183(g) (2024 Kan. S. Ct. R. at 241) (preponderance burden).

Claims of ineffective assistance of trial counsel are analyzed under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first part, the defendant must show that defense counsel's performance was deficient. If successful, the court moves to the second step and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would have been different. *State v. Evans*, 315 Kan. 211, 218, 506 P.3d 260 (2022).

To establish deficient performance under the first part, the defendant must show that defense counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. *Evans*, 315 Kan. at 218. The defendant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy. *Khalil-Alsalaami*, 313 Kan. at 486.

8

Under the second step, the defendant must show that defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on all the evidence. *Khalil-Alsalaami*, 313 Kan. at 486. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Evans*, 315 Kan. at 218.

The burden is on the movant to establish that counsel was ineffective. In order to meet this burden, the movant must do more than make conclusory remarks with no evidentiary support. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015). Mere speculative allegations are insufficient to meet this burden. *State v. Barahona*, 35 Kan. App. 2d 605, 611, 132 P.3d 959 (2006).

When a movant's claim is based on what might have happened if trial counsel had filed and fully litigated a motion concerning the admission or suppression of evidence, the movant must prove the motion was meritorious—likely would have been granted, and, but for the omission of the motion, *there is a reasonable probability the verdict would have been different.* If the omitted motion is not meritorious then trial counsel's failure cannot be characterized as objectively unreasonable, nor can it be considered prejudicial. See *Khalil-Alsalaami*, 313 Kan. at 498-500 (motion to suppress evidence).

*We review the rape shield statute.*

A rape victim's prior sexual activity is generally inadmissible. But the rape shield statute does allow evidence of a victim's prior sexual conduct if it is relevant to a fact at issue, such as evidence that another person may have been guilty of the alleged sexual abuse. See K.S.A. 21-5502(b); *State v. Atkinson*, 276 Kan. 920, 926-28, 80 P.3d 1143 (2003).

The defendant must make a written motion to the court to admit such evidence and state its relevancy. The motion must accompany an affidavit making an offer of proof of the previous sexual conduct. The court then will conduct a hearing to determine whether the evidence is relevant and not otherwise inadmissible. K.S.A. 21-5502(b).

The determination of whether evidence of prior sexual conduct is probative of a material issue—a component of relevancy—is discretionary with the district court. Such decision will not be overturned on appeal if reasonable minds could disagree. Evidence of prior sexual conduct that is vague, speculative, and uncorroborated is not probative and therefore inadmissible under the rape shield statute. See *State v. Berriozabal*, 291 Kan. 568, 586-88, 243 P.3d 352 (2010).

*Andrews fails to show his trial counsel was ineffective.*

At Andrews' trial, the district court did not exclude evidence of A.C.'s sexual history merely because his trial counsel failed to make a written motion as required. The court also determined the evidence he sought to admit was irrelevant and would not survive scrutiny under the rape shield law *because there was no evidence that A.C. had sex with anyone else in the relevant time frame.*

Our Supreme Court has found no abuse of discretion by the district court for excluding evidence of the victim's sexual history under similar circumstances. In *State v. Anderson*, 230 Kan. 681, 682, 640 P.2d 1232 (1982), medical evidence established sexual intercourse had occurred. The defendant wanted to elicit testimony whether the victim was sexually active so that the jury might speculate that someone else was responsible. But the defendant proffered no evidence that sexual intercourse between the victim and anyone else had occurred during any relevant time period. The Supreme Court held the district court did not abuse its discretion by excluding such testimony. 230 Kan. at 682.

10

We hold the ruling in *Anderson* controls here. Andrews similarly proffered no evidence that A.C. had sexual intercourse with anyone else during the relevant time. He merely had the nurse's report that A.C. had been sexually active in the past. Andrews wanted the district court to speculate that someone else could have been responsible for A.C.'s injuries. Andrews has not shown a motion to admit evidence under the rape shield statute would have succeeded. Thus, he has not shown his trial counsel was ineffective for failing to file such motion.

Andrews' argument that his trial counsel could have found evidence that A.C. had sex with someone else in the relevant time frame by using discovery tactics is pure speculation. The district court's findings of fact are supported by substantial competent evidence. Nurse Farley testified that A.C.'s injuries were recent. When A.C. first met Nurse Farley, she denied having consensual intercourse in the last three days. She left with law enforcement officers after the initial exam. An officer testified that after Nurse Farley's first examination, he took A.C. to an interview with detectives. A.C. returned to the hospital the next day for the genital exam. There was no evidence that A.C. had sex with someone else during this time frame.

Andrews' speculation falls far short of the proof sufficient to undermine our confidence in his convictions. He has not shown us that there is a reasonable probability the verdicts would have been different had such a motion been filed in his trial. We cannot hold a defense counsel to be ineffective for failing to pierce the rape shield law if there is no evidence to prove the claim. Constitutional claims are not proved by what might have happened. Instead, such claims—to be successful—must be based on what happened.

Affirmed.