No. 91,353

STATE OF KANSAS, *Appellee*, v. BILLY RAY NOAH, *Appellant.*

(162 P.3d 799)

*Quentin John Boone*, of Law Office of Quentin J. Boone, of Hays, argued the cause and was on the brief for appellant.

*Jared S. Maag*, assistant attorney general, argued the cause, and *Edward C. Hageman*, county attorney, and *Phill Kline*, attorney general, were on the brief for appellee.

Opinion filed July 27, 2007.

The opinion of the court was delivered by

ROSEN, J.: The State petitioned this court to review the Court of Appeals' decision reversing Billy Ray Noah's convictions of four counts of aggravated indecent liberties. The State claims that the Court of Appeals erred when it concluded that the district court had improperly admitted hearsay statements from the child victim in violation of *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004).

Because we are not addressing the sufficiency of the evidence, we will limit our recitation of the facts to those necessary for the resolution of the issue before us. When T.C. was 11 years old, she told her brother that Noah, a longtime family friend, had been touching her "private spot." T.C.'s brother informed T.C.'s mother and stepfather. T.C.'s mother asked T.C. about Noah, and T.C. told her mother that Noah had been putting his hands down her pants and his finger in her vagina.

T.C.'s mother reported T.C.'s allegations of abuse to Rooks County Undersheriff Duane Pfannenstiel, who contacted Social and Rehabilitation Services (SRS) worker Tamra Portenier. Portenier interviewed T.C. and her family in their home. Pfannenstiel accompanied Portenier during the interviews to observe the process. Although Pfannenstiel was dressed in civilian clothing, he was certain that T.C. knew he was a law enforcement officer. T.C. informed Portenier that the incidents occurred between April 15, 2000, when T.C. was 9 years old, and June 28, 2002, when T.C. was 11 years old. Although T.C. could not recall how many times

Noah had touched her, she was able to recount seven specific incidents which Portenier documented in her report.

The State charged Noah with four counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A), and one count of lewd and lascivious behavior in violation of K.S.A. 21-3508(a)(2).

The State called T.C. as a witness at the preliminary hearing. The trial court permitted T.C. to have her mother with her while she testified. The prosecutor questioned T.C. only about the first incident she reported to Portenier. During cross-examination regarding some of the alleged incidents, T.C. became emotional. The district court ordered two recesses to allow T.C. to compose herself. Nevertheless, the cross-examination was cut short when T.C. began crying and was unable to continue testifying.

Following T.C.'s preliminary hearing testimony, the State moved to disqualify T.C. as a witness pursuant to K.S.A. 60-460(dd). The trial court continued the preliminary hearing and ordered a psychological evaluation of T.C. to determine the probability, nature, and extent of any psychological injury she could suffer if she testified again. Noah objected to the State's motion to declare T.C. unavailable as a witness.

Marie Shields, an evaluator with the High Plains Mental Health Center, interviewed T.C. and concluded that T.C. would not be able to testify without "freezing up." Based on this evidence, the district court ruled that T.C. was unavailable as a witness. Concluding that the statements T.C. made to her brother, her mother, and Portenier were reliable and not induced by threats or promises, the district court held that T.C.'s statements to all parties were admissible pursuant to K.S.A. 60-460(dd).

A jury convicted Noah of four counts of aggravated indecent liberties, and he appealed to the Court of Appeals. The Court of Appeals reversed Noah's convictions and remanded the matter for a new trial, concluding that the admission of T.C.'s hearsay statements violated Noah's Sixth Amendment right to confrontation. *State v. Noah*, No. 91,353, unpublished opinion filed July 14, 2006. We granted the State's petition for review.

## ANALYSIS

The State claims that the Court of Appeals erred in reversing Noah's four convictions of aggravated indecent liberties. Although the State concedes that T.C.'s hearsay statements to Portenier and Shields were testimonial under *Crawford*, 541 U.S. 36, the State argues that the statements were admissible because Noah had a prior opportunity to cross-examine T.C. during the preliminary hearing.

The Sixth Amendment to the United States Constitution provides that a criminal defendant has the right "to be confronted with the witnesses against him." Similarly, the Kansas Constitution provides a criminal defendant the right "to meet the witness[es] face to face." Kan. Const. Bill of Rights, § 10. Relying on the constitutional right to confrontation, the United States Supreme Court held that testimonial hearsay statements are inadmissable unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68.

*Crawford* was decided after Noah filed his notice of appeal in this case, as were the consolidated cases of *Davis v. Washington* and *Hammon v. Indiana*, 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006), subsequent cases which clarify the type of statements that may be characterized as testimonial. Thus, the district court did not have the benefit of the *Crawford* and *Davis* Courts' analysis when it admitted T.C.'s hearsay statements. Nevertheless, we are required to apply *Crawford's* constitutional principles to Noah's direct appeal because it was pending when *Crawford* was decided. As a general rule, new constitutional principles apply to any cases pending on direct appeal when the decision was issued. *State v. Nguyen*, 281 Kan. 702, 715, 133 P.3d 1259 (2006); *State v. Meeks*, 277 Kan, 609, 613, 88 P.3d 789 (2004) (applying *Crawford* to defendant's direct appeal even though the defendant's trial occurred before *Crawford* was issued).

As we begin our analysis of the State's claim, we note the State's concession regarding the testimonial nature of T.C.'s statements to Portenier and Shields. Because the State abandoned its claim that

T.C.'s statements were not testimonial in its petition for review, we will not address that issue. Thus, we need not utilize the analysis established in *Davis* and *Hammond*, which determined when statements are testimonial under *Crawford*. Rather, our analysis is premised on the State's concession that T.C.'s statements were testimonial and focuses solely on whether the requirements of *Crawford* were met. We apply a de novo standard of review when considering issues pertaining to the Confrontation Clause of the Sixth Amendment to the United States Constitution. *State v. Adams*, 280 Kan. 494, 511, 124 P.3d 19 (2005).

The first requirement for admitting hearsay under *Crawford* is whether the declarant was unavailable. The parties do not dispute that T.C. was unavailable. Thus, we will limit our analysis to whether Noah had a prior opportunity to cross-examine T.C.

T.C. testified at the preliminary hearing. Noah's defense counsel was able to ask T.C. a number of questions before T.C.'s emotional breakdown prevented her from returning to the witness stand. Relying on the fact that Noah's defense counsel asked T.C. some questions, the State argues that Noah had an opportunity to cross-examine T.C. Acknowledging that Noah's cross-examination was abbreviated, the State argues that the Confrontation Clause does not guarantee a perfect cross-examination. In the alternative, the State argues that Noah squandered his opportunity to cross-examine T.C. by the strategic design of the cross-examination or inarticulate questioning. According to the State, Noah's defense counsel created T.C.'s unavailability by the confusing nature of his questions, and Noah should bear the consequences of those actions.

Noah, on the other hand, contends that he did not have an opportunity for effective cross-examination because the district court abruptly terminated his questioning due to T.C.'s emotional breakdown. Noah argues that the opportunity for an effective cross-examination occurs when the defendant is able to complete his or her inquiry.

Although *Crawford* requires an opportunity for cross-examination before hearsay can be admitted, it provides no guidance for how much cross-examination is required to afford the defendant

an adequate opportunity. In *Crawford,* the prosecutor introduced hearsay statements made by the defendant's wife to police. The defendant's wife had not testified during any of the proceedings, so the defendant had not had any opportunity to cross-examine her. Since *Crawford* was decided, the United States Supreme Court has not squarely addressed the issue of what constitutes an opportunity for cross-examination to satisfy the requirements of *Crawford.*

However, the Fifth and the Ninth federal circuits have addressed the issue. In *United States v. Acosta,* 475 F.3d 677 (5th Cir. 2007), a codefendant, who had pleaded guilty, advised the court that he feared for the safety of his family if he testified at Acosta's trial. The court ordered the codefendant to testify, but he refused to answer some of the Government's questions on direct examination. Although the codefendant admitted that his prior statements were true, he refused to implicate Acosta in certain aspects of the crime. As a result, the Government admitted a statement that the codefendant made during his plea. The Government also admitted testimony from a federal agent regarding the codefendant's statements during an interrogation. Acosta was allowed to cross-examine the codefendant. The codefendant answered all of Acosta's questions during cross-examination. Nevertheless, Acosta claimed that the admission of the codefendant's testimony, the codefendant's prior statement, and the federal agent's testimony violated the Confrontation Clause because he had not been able to cross-examine the codefendant about his prior statements. 475 F.3d at 679-80.

Basing its decision on the facts of the case rather than a bright-line rule, the *Acosta* court rejected the defendant's claim. 475 F.3d at 682-83. The *Acosta* court relied on the fact that the codefendant had admitted making his prior statements and testified that the prior statements were truthful. The *Acosta* court further relied on the fact that the codefendant answered all of Acosta's questions during cross-examination, including questions aimed at impeaching the codefendant's motives for making his prior statements. The *Acosta* court concluded that Acosta's failure to cross-examine the codefendant about the portions of his prior statements that impli-

cated Acosta was a tactical decision and did not support his claim that he did not have a sufficient opportunity to cross-examine. 475 F.3d at 683.

In *United States v. Wilmore*, 381 F.3d 868 (9th Cir. 2004), the Ninth Circuit reached the opposite result based on the facts of that case. In *Wilmore*, the defendant's wife called 911 to report that her husband had robbed an abortion clinic and was carrying a gun. When the police responded, the defendant's wife admitted that she lied about the robbery of the abortion clinic to get the police to respond more quickly to her call, then advised the police that her husband had stolen her children's Playstation 2 video game. The police found the defendant in a nearby apartment. Lying on a chair near the defendant, police found a jacket with a gun in one of the pockets. Before a grand jury, the defendant's wife testified that the defendant had been wearing the jacket and had possessed the gun. The defendant was indicted on one count of being a felon in possession of a firearm. However, prior to the defendant's trial, his wife advised the prosecutor that she intended to disavow her grand jury testimony. 381 F.3d at 870-71.

At trial, the defendant's wife denied seeing the defendant with a gun. Although the prosecutor impeached her with her grand jury testimony, the defendant's wife continued to assert that she had not seen the defendant with a gun. When the prosecutor asked the defendant's wife whether her grand jury testimony was truthful, the court interrupted the proceedings to advise her of her Fifth Amendment rights. The court then advised defense counsel to avoid questions during cross-examination that would cause the defendant's wife to invoke her Fifth Amendment privilege. After the defendant's wife invoked her Fifth Amendment rights in response to the question of whether she lied to the 911 dispatcher, defense counsel limited his questions to topics other than the grand jury testimony. On appeal, the defendant argued that the limitation of his cross-examination violated his right to confrontation. 381 F.3d at 870-71.

Acknowledging that *Crawford* requires an opportunity for cross-examination before testimonial hearsay can be admitted, the *Wilmore* court reversed the defendant's conviction. Stating that the

defendant had no opportunity to confront his wife about why she testified the way she did before the grand jury or whether the grand jury testimony was true, the *Wilmore* court concluded that the trial court's restriction prohibited the defendant from probing his wife's motivations behind her testimony. 381 F.3d at 872-73.

Both *Acosta* and *Wilmore* stand for the proposition that each case should be considered individually on the facts of the case, but neither case establishes a standard for determining when earlier cross-examination is sufficient under *Crawford*. Although the United States Supreme Court has not addressed the sufficiency of cross-examination to satisfy *Crawford*, it has addressed the issue of limiting the defendant's cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 89 L. Ed. 2d 674, 106 S. Ct. 1431 (1986). In *Van Arsdall*, the prosecutor entered into an agreement with a witness, who agreed to testify in return for the dismissal of charges against him. The trial court prevented the defendant from inquiring about the deal on cross-examination. To determine whether the trial court had prejudiced the defendant by limiting his cross-examination, the *Van Arsdall* Court evaluated the facts to determine whether the defendant "was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' " 475 U.S. at 680 (quoting *Davis v. Alaska*, 415 U.S. 308, 318, 39 L. Ed. 2d 347, 94 S. Ct. 1105 [1974]). Concluding that a reasonable jury might have received a different impression of the witness' credibility if the defendant's counsel had been permitted to cross-examine him about the deal, the *Van Arsdall* court remanded the matter to the Delaware Supreme Court to determine whether the error was harmless. 475 U.S. at 684.

In *State v. Atkinson*, 276 Kan. 920, 80 P.3d 1143 (2003), this court applied *Van Arsdall*. Atkinson was charged with rape. Relying on the rape shield statute, the district court precluded Atkinson from cross-examining the complaining witness about whether she had had consensual sexual intercourse with the defendant the night before the rape. The *Atkinson* court concluded that the district

court had erroneously prevented Atkinson from cross-examining the complaining witness in an otherwise appropriate manner to expose facts related to the witness' reliability. 276 Kan. at 929. Because there was DNA evidence against Atkinson and consensual sex the night before the alleged rape could have explained the presence of Atkinson's DNA, the *Atkinson* court held that the error was not harmless. 276 Kan. at 930.

*Van Arsdall* established that limitation of cross-examination can violate a defendant's right to confrontation. The United States Supreme Court stated:

" 'The main and essential purpose of confrontation is to *secure for the [defendant] the opportunity of cross-examination.*' [Citation omitted.] Of particular relevance here, '[w]e have recognized that the exposure of a witness' motivation in testifying is a proper and an important function of this constitutionally protected right of cross-examination.' [Citations omitted.] It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. [In addition,] 'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' [Citation omitted.]" 475 U.S. at 678-79.

The Court of Appeals accurately summarized cross-examination of T.C. as follows:

"Our review of the preliminary hearing transcript indicates defense counsel questioned T.C. about Incident No. 1, and T.C. admitted Noah did not penetrate her vagina during the incident. Counsel then began to question T.C. about Incident No. 2, but T.C. had difficulty answering questions and the court took a recess.

"Following the recess, T.C. continued testifying about Incident No. 2. T.C. said she was laying on the couch when Noah put his hand down her pants. Defense counsel asked her if she was telling the truth when she told Portenier this happened 'a lot,' and T.C. responded affirmatively.

"Defense counsel also briefly questioned T.C. about Incident No. 3. However, when counsel asked T.C. several questions regarding Incident No. 4, T.C. did not respond and then said she could not remember. When T.C. began to discuss Incident No. 5, defense counsel interrupted:

"A. He moved up behind me and he-

"Q. How did he come up behind you, with his body, with his arms?
"A. With his arms.
"Q. With his arms. And what did you do? (Pause.)
"A. (Witness crying.)'
"At this point, the prosecutor requested another recess. After the recess, the prosecutor advised the court T.C. was unable to continue her testimony." *State v. Noah*, slip op. at 20-21.

Our review of the entire record under these specific facts leads us to disagree with the State's argument that Noah had a sufficient opportunity to effectively cross-examine T.C. However, in reaching this conclusion, we also reject Noah's argument that the cross-examination is not sufficient until defense counsel determines that it is or unless it is completed. Rather, we adopt the case-by-case approach used by the *Acosta* and *Wilmore* courts.

In adopting this approach, we do not grant attorneys license to filibuster, purposely confuse, or harass children or other vulnerable witnesses in an attempt to make an otherwise competent witness unavailable. Nor do we want to give incentive for those same witnesses to be relieved of their obligation to be made "available" by answering only a few questions on cross-examination because it is uncomfortable or intimidating, and thereby defeating a defendant's right to confrontation. In this case, we acknowledge that T.C.'s inability to testify was not created by any intentional motivation to be unavailable. Further, while defense counsel's cross-examination may be characterized as confusing and unclear, we find no purposeful conduct that would rise to the level of intentionally attempting to disqualify T.C. as a competent witness. Applying the *Van Arsdall* standard to the facts of this case, we conclude that the limitation of Noah's cross-examination caused by T.C.'s inability to continue prohibited Noah from engaging in otherwise appropriate cross-examination aimed at exposing facts from which the jury could have drawn inferences about T.C.'s reliability.

In *State v. Henderson* 284 Kan. , 160 P.3d 766 (No. 92,251 filed June 22, 2007), we concluded that the admission of testimonial hearsay violated the defendant's constitutional right to confrontation. However, before reversing and remanding the defendant's conviction, we applied the constitutional harmless error standard

from *Chapman v. California*, 386 U.S. 18, 22, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), which requires us to find the error harmless if we possess "a firm belief beyond a reasonable doubt that an error of constitutional magnitude had little, if any, likelihood of having changed the result of the trial." *Henderson*, slip op. at 30. Thus, before concluding that the violation of Noah's right to confrontation requires reversal, we must determine whether the error in admitting T.C.'s statements was harmless. See *Van Arsdall*, 475 U.S. at 684. The *Van Arsdall* Court stated that a harmless error analysis is dependent on the following factors, all of which are readily accessible to a reviewing court: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." 475 U.S. at 684.

T.C.'s statements to Portenier, Pfannenstiel, and Shields were critical to the prosecution's case. There were no eyewitnesses and no physical evidence to establish the abuse alleged by T.C. The statements T.C. made to Portenier, Pfannenstiel, and Shields were not cumulative. Although T.C. told her brother that Noah had touched her private spot, T.C. did not tell him any details. T.C.'s mother did not testify about the statements T.C. made to her. Rather, T.C.'s statements to her mother were admitted during Pfannenstiel's testimony. The only evidence regarding details was admitted through Portenier's testimony. Thus, there was no evidence to corroborate or contradict Portenier's testimony. Because there were no eyewitnesses, Noah's only opportunity for contradicting T.C.'s statements came from his testimony and his brief opportunity to cross-examine T.C. at the preliminary hearing before she became emotionally distraught and could not continue. During Noah's cross-examination, T.C. testified in accordance with Portenier's testimony regarding four of the seven specific incidents, even though she could not remember one of the incidents. However, Noah did not have an opportunity to inquire about T.C.'s motives for making the accusations against him. Any evidence of

T.C.'s motive may have had a substantial impact on the jury because the case turned on whether the jury believed T.C.'s accusations or Noah's denial.

Considering all of these factors together, we conclude that the erroneous admission of T.C.'s statements in violation of Noah's right to confrontation was not harmless. Under these facts, we cannot conclude beyond a reasonable doubt that the error had little effect on the result of the trial. Accordingly, we reverse his convictions and remand the matter for a new trial. The decision by the Court of Appeals is affirmed.

JOHNSON, J., not participating.
LARSON, S. J., assigned.

DAVIS, J., concurring: I concur in the majority decision reversing the defendant's convictions. However, I disagree with the majority that the defendant's convictions must be reversed based upon its conclusion that the defendant did not have a meaningful opportunity to confront the witness against him.

In my opinion, the basis for reversal of the defendant's convictions does not turn upon whether the defendant had a meaningful opportunity to cross-examine the victim during the preliminary hearing. Instead, the defendant's convictions must be reversed because they are based upon testimonial hearsay that was never subject to cross-examination before the finder of fact, a practice condemned by the United States Supreme Court's recent opinions in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), and *Davis v. Washington*, 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006).

The instant case presents a unique procedural problem that has not been addressed by this or, as far as I can determine, any other jurisdiction. As the majority describes, the victim testified at the preliminary hearing and was subject to very limited cross-examination at that time. See slip op. at 4. After the preliminary hearing,

the State moved to disqualify the victim as a witness pursuant to K.S.A. 60-460(dd) and to have her declared unavailable for purposes of trial. The trial court granted the State's motion, and as a result, allowed the victim's brother and mother, as well as a social worker, to testify at trial as to statements the victim made to them. The State concedes in its petition for review that these statements constituted testimonial hearsay.

The distinguishing procedural issue presented by this case, however, is that *the State never attempted to introduce a transcript of the victim's preliminary hearing testimony*. The effect of this omission was that, from the perspective of the jury as the finders of fact, the State's case was based entirely on testimonial hearsay evidence that had never been subjected to the rigors of cross-examination. In my opinion, such a result is barred by the Supreme Court's recent decisions concerning the Confrontation Clause of the Sixth Amendment.

In *Crawford*, the Court held that the Confrontation Clause bars the "admission of testimonial *statements* of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." (Emphasis added.) 541 U.S. at 53-54; see also *Davis*, 547 U.S. at 821 (quoting *Crawford*). In so holding, the Court focused exclusively on the particular hearsay statement to be admitted—not on the individual declarant. I therefore read these cases to hold that if the State fails to produce either the declarant of a testimonial statement as a witness at trial or evidence (such as a preliminary hearing transcript) demonstrating that the statement in question has been subjected to adequate cross-examination by the defendant, the Confrontation Clause prevents the State from introducing additional testimonial statements of that declarant at trial through other means.

The *Crawford* Court emphasized the important role of cross-examination with regard to testimonial hearsay as a procedural guarantee of the statements' trustworthiness. According to the Court, this concern for assuring that the finders of fact were able to judge the statements' reliability was enshrined in the Confrontation Clause:

"[T]he Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined. *Cf.* 3 Blackstone, Commentaries, at 373 ('This open examination of witnesses . . . is much more conducive to the clearing up of truth'); M. Hale, History and Analysis of the Common Law of England 258 (1713) (adversarial testing 'beats and bolts out the Truth much better')." *Crawford,* 541 U.S. at 61-62.

The majority assumes that these concerns relating to the reliability of statements would be allayed if the defendant were afforded a full opportunity to cross-examine the victim at the preliminary hearing, regardless of whether the preliminary hearing transcript was ever offered as evidence at trial. According to the majority's reasoning, even if the jury was completely unaware of this prior cross-examination, the victim's hearsay statements made on any occasion to others concerning the crimes charged would have been admissible at trial through those other witnesses' testimony.

I disagree. Because I find that the requirements of unavailability and opportunity for cross-examination discussed in *Crawford* and *Davis* relate to the *statement* sought to be admitted at trial, not generally to the declarant who made that statement, I would hold that even a full cross-examination at some point previously in the proceedings would not allow a court to admit the victim's statements by way of other witness' testimony if the State did not first establish that such statements had been subjected to cross-examination by offering into evidence the previous transcript.

Such a case is no different from a scenario where the declarant is available to testify but the State fails to call him or her as a witness during its case in chief. This court has repeatedly held that such actions are barred by the Confrontation Clause. See *State v. Fisher,* 222 Kan. 76, 82, 563 P.2d 1012 (1977). Just as we required in *Fisher* that the State call a witness-declarant under K.S.A. 60-460(a) in order for that witness' previous hearsay statements to be admissible, I would find that a State must likewise introduce evidence that the unavailable witness' testimonial hearsay has been subject to cross-examination before it may introduce evidence of

those statements under K.S.A. 60-460(dd). The defendant has no responsibility to introduce the declarant's previous testimony or cross-examination, as a defendant is not required to prove his or her innocence at trial. See PIK Crim. 3d 52.02.

There is no question that a defendant's prior cross-examination of a witness during criminal proceedings authorizes the State under *Crawford* and *Davis*, if the witness is subsequently found unavailable to testify, to admit that witness' prior testimony at trial. See *Crawford*, 541 U.S. at 59 n.9. The statement admitted has been subjected to cross-examination, and the defendant's right of confrontation has been preserved. See, *e.g.*, *State v. Stano*, 284 Kan. 126, 141-42, 159 P.3d 931 (2007). That said, the decisions in *Crawford* and *Davis* relate to the previous *statement* sought to be admitted, not to other statements the absent witness may have made on any given occasion concerning the crime charged. See *Crawford*, 541 U.S. at 54 (stating that "the common law in 1791 conditioned admissibility of an absent witness's *examination* on unavailability and a prior opportunity to cross-examine" [emphasis added]); 541 U.S. at 57 (*"prior trial or preliminary hearing testimony* is admissible only if the defendant had an adequate opportunity to cross-examine" [emphasis added]). As the Oregon Supreme Court explained in *State v. Mack*, 337 Or. 586, 593 n.6, 101 P.3d 349 (2004): "Under *Crawford*, the Confrontation Clause does not bar admission of a statement if the defendant had an opportunity to cross-examine the declarant when the statement was made [citation omitted], or, if not, has the opportunity to do so at trial [citation omitted]." The Confrontation Clause does not, however, sanction the admission of testimonial statements that have never been subject to cross-examination before a finder of fact.

Furthermore, contrary to the majority's assumptions, the *Crawford* and *Davis* decisions do *not* permit a district court to allow additional statements of the same declarant that have not been subject to cross-examination. If a court determines that these other statements are testimonial hearsay, the statements are inadmissible under *Crawford* and *Davis*, notwithstanding the provisions of K.S.A. 60-460(dd).

Thus, in my opinion, even assuming that the defendant in this case would have had the opportunity to fully cross-examine the victim during the preliminary hearing, it would remain true from the perspective of the jury that the only evidence supporting the defendant's conviction is testimonial hearsay in violation of *Crawford* and *Davis*. Are all hearsay statements of a victim rendered admissible at trial because the defendant in the past had an opportunity to cross-examine the victim? In my opinion the answer is no! While the absent witness' previous *testimony* may become admissible based upon a defendant's prior right of cross-examination, *Crawford* and *Davis* condemn the admission of testimonial hearsay of what others say the witness said on other occasions concerning the charges filed.

In this case, there is no question that the witnesses testifying about what the victim said are offering hearsay evidence as that term is defined by Kansas law. See K.S.A. 60-460 (defining hearsay as any "statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated"). The State conceded that these hearsay statements were testimonial for purposes of our Confrontation Clause analysis. 284 Kan. at 611-12. The full opportunity to cross-examine a victim on a previous occasion may ensure the admission of that victim's testimony at trial, but even a full opportunity to cross-examine the victim does not ensure the admission of testimonial hearsay statements of the victim at trial. Such evidence remains inadmissible testimonial hearsay under *Crawford* and *Davis* unless that evidence itself has been subjected to "the crucible of cross-examination." *Crawford*, 541 U.S. at 61. To the extent that K.S.A. 60-460(dd) would allow the admission of such evidence, K.S.A. 60-460(dd) is unconstitutional.

*Crawford* provides that "[w]here testimonial *evidence* is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." (Emphasis added.) 541 U.S. at 68. I would conclude that defendant's convictions must be reversed because his convictions are based upon testimonial hearsay evidence in violation of *Crawford* and *Davis*. This result occurs whether or not the defendant

had a full opportunity to cross-examine the victim at preliminary hearing, because the State failed to introduce evidence at trial either that those testimonial statements had been subject to cross-examination or that there had been an opportunity for cross-examination, which is required by the Confrontation Clause.