NOT DESIGNATED FOR PUBLICATION

No. 122,824

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CLARENCE RAY WILSON JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed September 24, 2021. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., GARDNER and CLINE, JJ.

PER CURIAM: Clarence Ray Wilson Jr. seeks to set aside his aggravated robbery conviction because the district court found a witness "unavailable" and allowed the State to play a video of that witness' preliminary hearing testimony for the jury. He also claims the Kansas Sentencing Guidelines Act (KSGA) violates his right to a jury trial under section 5 of the Kansas Constitution Bill of Rights by allowing the court, instead of a jury, determine his criminal history. Because the State sufficiently established the witness was unavailable based on medical issues and Wilson was allowed an adequate opportunity to examine the witness at the preliminary hearing, we affirm his conviction.

1

And we affirm his sentence because the Supreme Court just determined the KSGA does not violate a defendant's constitutional right to a jury trial.

FACTS

Since the facts of Wilson's offense are largely irrelevant to the issues before us, we will highly summarize them. In January 2019, an armed, masked man robbed the Dog N Shake in Wichita, as two workers were preparing to open the store for the day. As the robber left through the front door, one of the workers ran out the back door. The worker told Michael Cook, a delivery driver who had just arrived, that the Dog N Shake was robbed. He identified the robber and asked Cook to follow him. Cook called 911 while he pursued the man. When the police arrived, Cook identified Wilson as the man he had been following and the one the worker said had robbed Dog N Shake.

The State charged Wilson with aggravated robbery under K.S.A. 2018 Supp. 21-5420(b)(1). At the September 2019 preliminary hearing, the State obtained permission to videotape Cook's testimony. The State notified both the district court and Wilson that Cook's health was deteriorating, and so he may be unable to testify at trial. Cook suffered from bladder cancer and chronic obstructive pulmonary disease (COPD), which significantly suppressed his immune system.

At the outset of the January 2020 trial, the State reminded the district court and Wilson that it had videotaped Cook's preliminary testimony out of concern for his trial availability. The State said it had been in contact with Cook and his medical provider, Lauren Ewertz, several times during the prior week about Cook's health. The State mentioned a letter from Ewertz that the State had provided to the court and Wilson the prior week, which outlined Cook's medical conditions and why Ewertz believed it would impair Cook's health to testify at trial. The State proposed to offer Cook's recorded testimony from the preliminary hearing at trial and offered to call Ewertz to the stand to

2

testify to Cook's medical state. Since Wilson objected, the court asked the State to bring Ewertz in to testify before it decided whether to grant the State's request.

Ewertz, a nurse practitioner, testified she treats homebound patients. Cook was one of her patients. She testified Cook had bladder cancer, significant weight loss, significant muscle weakness, COPD, and debilitating anxiety. Ewertz believed Cook's immune system was likely compromised from his cancer. She was concerned his compromised immune system would put him at risk for further illness if he came to court to testify in the middle of cold and flu season. When pressed by the defense, Ewertz said Cook was on oxygen, but he could converse while sitting in his recliner. But she also said Cook lacked access to a portable oxygen machine at the time of trial. Ultimately, Ewertz testified that, based on her medical training, she believed testifying at trial would endanger Cook's health and well-being.

The district court admitted the video of Cook's preliminary hearing testimony over Wilson's objection, ruling that Cook was medically "unavailable" to testify at the trial. The State played the video for the jury and called several other witnesses to testify. Wilson did not testify, nor did he present any witnesses. The jury found Wilson guilty of aggravated robbery.

ANALYSIS

Wilson claims the State did not adequately establish Cook's unavailability for trial, and Wilson's opportunity to cross-examine Cook at the preliminary hearing did not satisfy his right of confrontation. Whether there is sufficient proof that a witness is unavailable for trial is a question within the district court's discretion. *State v. Page*, 303 Kan. 548, 555, 363 P.3d 391 (2015). A district court abuses it discretion if its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. 303 Kan. at 555. The party asserting the district court abused its discretion

bears the burden of showing such abuse of discretion. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

*The State sufficiently established Cook was unavailable to testify at trial.*

Wilson contends the State did not establish Cook was "unable" to testify and therefore Cook was not "unavailable." He also argues the State did not show that Cook would suffer "undue anxiety" by testifying and that general anxiety should not excuse his appearance at trial.

Under K.S.A. 2020 Supp. 60-460(c)(2)(B), the district court may allow admission of prior testimony from a preliminary hearing in the same criminal case if the district court judge finds the declarant is unavailable and admitting the testimony would not violate the adverse party's right to confront the witness. Under K.S.A. 60-459(g)(3), an "unavailable witness" includes "situations where the witness is . . . unable to be present or to testify at the hearing because of death or then existing physical or mental illness." One of the concerns of allowing prior testimony is that it prevents the jury from having a chance to view the witness' demeanor as he or she testifies. See *Maryland v. Craig*, 497 U.S. 836, 837, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990).

In *State v. Ruebke*, 240 Kan. 493, 518, 731 P.2d 842 (1987), the Kansas Supreme Court found the district court did not abuse its discretion when it found an "unavailable witness" based on a physician's letter describing the witness' second- and third-degree burns as well as receiving testimony from the witness' mother describing her son's condition. The letter also stated it would not be in the witness' best mental and physical well-being to appear in court to testify.

In contrast, another panel of this court found the district court should have required the State to procure the witness' physician to give sworn testimony about the

4

witness' inability to participate in the trial. See *State v. Fondren*, 11 Kan. App. 2d 309, 314, 721 P.2d 284 (1986) *overruled on other grounds by State v. Daws*, 303 Kan. 785, 792, 368 P.3d 1074 (2016). Similarly, in *State v. Rodriguez-Garcia*, 27 Kan. App. 2d 439, 8 P.3d 3 (1999), a panel of this court held that mere assertions by the State on the record are not evidence and may not support an unavailable witness determination. 27 Kan. App. 2d at 443; see also *State v. Houston*, No. 93,771, 2006 WL 851306, at *3 (Kan. App. 2006) (unpublished opinion) (holding that district court abused its discretion when it admitted preliminary hearing testimony of State's witness after State merely asserted on record that it could not find witness).

The district court did not abuse its discretion here. Wilson was on notice of Cook's potential unavailability for trial at the preliminary hearing. The State also told Wilson about Cook's then-existing mental and physical condition shortly before trial. And, as in *Ruebke* (and unlike *Fondren* and *Rodriguez-Garcia*), Cook's personal at-home nurse practitioner testified about Cook's significant medical issues and her concerns about the detrimental impact Cook's appearance at trial could have on his health. And, importantly, the State did not merely read a transcript of Cook's preliminary hearing testimony to the jury. Instead, the jury had a chance to view Cook's demeanor as he testified.

As the State aptly notes, Kansas caselaw does not require a witness to be physically incapable of making it into the courtroom to be deemed unavailable to testify due to a then-existing physical or mental illness. See *State v. Stano*, 284 Kan. 126, 130, 140, 159 P.3d 931 (2007). And we need not determine whether the district court *could* or *should* have forced Cook to testify when the evidence suggests Cook was going through a considerable illness—both physically and mentally. Rather, we need only determine whether the district court's decision to declare Cook unavailable, under the circumstances, was arbitrary, fanciful, or unreasonable, or based on a legal or factual error. We find it was not.

*Wilson had an adequate opportunity to confront Cook "face to face" at his preliminary hearing.*

Wilson also argues the court violated his right to confront Cook "face to face," under K.S.A. 2020 Supp. 60-460(c)(2)(B). See section 10 of the Kansas Constitution Bill of Rights. We review de novo a challenge to a defendant's right of confrontation. See *State v. Stafford*, 312 Kan. 577, 588, 477 P.3d 1027 (2020).

Once a district court finds the declarant is an unavailable witness, the State may present previous testimony at trial unless it violates a criminal defendant's right to meet the witness face to face. K.S.A. 2020 Supp. 60-460(c)(2)(B). Under K.S.A. 2020 Supp. 60-460(c)(2)(B), a party may admit testimony given by an unavailable witness at "a preliminary hearing" if the adverse party had the "opportunity for cross-examination with an interest and motive similar to that which the adverse party" had in the current action. See *State v. Gleason*, 299 Kan. 1127, 1165, 329 P.3d 1102 (2014) (citing *Crawford v. Washington*, 541 U.S. 36, 68-69, 124 S. Ct. 1354, 158 L. Ed. 2d 177 [2004]), *rev'd and rem'd on other grounds Kansas v. Carr*, 577 U.S. 108, 136 S. Ct. 633, 193 L. Ed. 2d 535 (2016).

In *State v. Terry*, 202 Kan. 599, 601, 451 P.2d 211 (1969), the Kansas Supreme Court recognized that "[t]he basic and primary reason underlying the constitutional 'confrontation' rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him." Kansas courts, including *Terry*, recognize an exception to the confrontation requirement "where a witness is unavailable and has given testimony at a previous judicial proceeding against the same defendant which was subject to cross-examination by that defendant." 202 Kan. at 601. This exception is justified because "the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement." 202 Kan. at 602.

And although a defendant's questions or line of inquiry may have differed at the preliminary hearing, the defendant's motive and interest, under Kansas law, need only be similar—not identical. See *State v. Reed*, 302 Kan. 227, 247, 352 P.3d 530 (2015) (rejecting Reed's theory that motives were dissimilar because Reed's attorney wanted to assess witness' demeanor in first hearing and discredit witness in second hearing). A similar interest exists if the accused is defending against the same charges in both the preliminary hearing and the trial. And it is the defendant's motive that matters—not his or her attorney's. 302 Kan. at 247.

While Kansas caselaw requires an opportunity for cross-examination before the court admits hearsay statements, the caselaw does not specify "how much cross-examination is required to afford the defendant an adequate opportunity." *State v. Noah*, 284 Kan. 608, 612-13, 162 P.3d 799 (2007). The court considers each case on its own particular facts. *Gleason*, 299 Kan. at 1172. The Kansas Supreme Court has held that a defendant was denied a meaningful opportunity to cross-examine when the child victim became inconsolable while testifying at the preliminary examination and the State offered her incomplete testimony at the trial instead of live testimony. See *Noah*, 284 Kan. at 617-19. The court also determined the erroneous admission was not harmless. 284 Kan. at 617-19. But in *Gleason*, the Kansas Supreme Court held that unless the defendant was denied a *full* opportunity to cross-examine the witness, the previous opportunity to cross-examine that witness at the preliminary hearing will satisfy the right to confront. See 299 Kan. at 1174. Although *Gleason* has gone through a considerable procedural history from the district court up to the United States Supreme Court and back, the discussion in *Gleason* about the hearsay exception and preliminary hearing testimony is still sound law in Kansas. See *Reed*, 302 Kan. at 245.

Wilson was present and represented by counsel at the preliminary hearing. He availed himself of the opportunity to cross-examine Cook. Under Kansas law, this opportunity satisfied Wilson's confrontation rights. *Stano*, 284 Kan. at 142. His "inability

to cross-examine [Cook] a second time does not equate to a Confrontation Clause violation." See *State v. Young*, 277 Kan. 588, 599, 87 P.3d 308 (2004).

Although Wilson argues he had "incomplete" facts at the time of the preliminary hearing, he fails to identify any additional facts which he later learned at trial or how his cross examination at trial would have differed from his examination at the preliminary hearing. Wilson was motivated at the preliminary hearing to cross-examine Cook to discredit him. Because this same motive existed at trial, Wilson's interests were sufficiently similar. And Kansas courts have yet to find that a defendant must have the opportunity to cross-examine a witness as to every allegation that may arise during trial. *Stano*, 284 Kan. at 144 ("Previous Kansas cases recognize that there may be details at trial that have not been the subject of cross-examination in prior proceedings."). Without more from Wilson indicating his motive at the previous hearing was dissimilar from his motive at trial, Wilson's argument is unpersuasive.

Wilson had a full and meaningful opportunity to cross-examine Cook. Cook did not resist cross-examination and answered every question posed for 13 transcript pages of testimony. Wilson fails to direct this court to any part of Cook's preliminary hearing testimony as it relates to any later facts discovered by the defense that would have made the first cross-examination inadequate. See *Stano*, 284 Kan. at 145 (finding that defendant's argument that he did not have meaningful opportunity to cross-examine witness because of later discovered facts was unpersuasive because review of transcript revealed defendant was both aware of and cross-examined witness about those facts).

At any rate, the long-standing law holds a defendant's full opportunity to cross-examine an unavailable witness in the preliminary hearing of his or her own trial is enough to meet the safeguards of confrontation. See *Reed*, 302 Kan. 247; *Stano*, 284 Kan. at 144; and *Young*, 277 Kan. at 599. Thus, we find the district court did not violate Wilson's right to confront his witnesses "face to face."

8

We affirm the district court's decision to admit Cook's videotaped testimony at trial. Since we find no error, we need not address Wilson's argument on harmlessness.

*The KSGA does not violate Wilson's right to a jury trial under section 5 of the Kansas Constitution Bill of Rights.*

Wilson also challenges his sentence, claiming the KSGA sentencing scheme on which his sentence was based is unconstitutional. The district court sentenced Wilson to a presumptive sentence of 83 months in jail with a postrelease supervision term of 36 months. Ordinarily, we do not hear appeals from presumptive sentences. See K.S.A. 2020 Supp. 21-6820(c)(1). "But [Kansas courts] have recognized an exception for cases in which the defendant challenges the constitutionality of the overall statutory sentencing scheme rather than the defendant's individual sentence." *State v. Albano*, 313 Kan. 638, 640, 487 P.3d 750 (2021). Because Wilson challenges the constitutionality of the sentencing scheme, this issue is not subject to the jurisdictional bar in K.S.A. 2020 Supp. 21-6820(c)(1).

Wilson also raises this constitutional question for the first time on appeal. Normally issues not raised before the district court cannot be raised on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Even so, we have recognized limited exceptions to this general rule. Wilson argues two of these exceptions apply here: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case and (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). Wilson argues his constitutional challenges involve purely questions of law and the denial of his fundamental right to a jury. We will exercise our discretion to consider Wilson's arguments under these exceptions.

First, Wilson asserts that Kansas juries at common law had to find any fact that increased the penalty for a crime beyond a reasonable doubt. He claims this means the KSGA, which allows the district court judge to make judicial findings of criminal history for sentencing purposes, is unconstitutional because it violates section 5 of the Kansas Constitution Bill of Rights. Wilson offers no legal support for his assertion, and, after submission of the briefs here, the Kansas Supreme Court rejected the same argument Wilson makes. See *Albano*, 313 Kan. at 657.

Section 5, which mandates that "[t]he right of trial by jury shall be inviolate," preserves the jury trial right as it historically existed at common law when the Kansas Constitution was created. *State v. Love*, 305 Kan. 716, 734, 387 P.3d 820 (2017). Generally, juries in Kansas decide the defendant's guilt, and the sentencing court determines the defendant's punishment. Under the KSGA, when prior convictions are considered in determining punishment, the issue is within the power and authority of the district court. *Albano*, 313 Kan. at 657.

Albano made very similar arguments to the ones Wilson makes here. She argued that Kansas common law used to require the State to prove to the jury any penalty-increasing facts, beyond a reasonable doubt. Like Wilson, Albano also argued that Justice Clarence Thomas' concurrence in *Apprendi v. New Jersey*, 530 U.S. 466, 499, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), citing foreign state court decisions in the early 1800s, supports broadening the rule to include sentence-enhancing prior convictions. *Albano*, 313 Kan. at 651-52.

The *Albano* court rejected Albano's reliance on Justice Thomas' concurrence and held the foreign state court decisions he referenced do not reflect Kansas common law. The *Albano* court examined Kansas common law, noting that, in Kansas, juries have traditionally determined guilt while the sentencing court determined sentence. *Albano* held that section 5 of the Kansas Constitution Bill of Rights does not guarantee the right

to have a jury determine the existence of sentence-enhancing prior convictions under the KSGA. 313 Kan. at 656-57.

Because determining criminal history to impose sentence falls within the exclusive power of the district court, the KSGA's method of determining criminal history does not implicate a defendant's right to trial by jury under section 5. *Albano*, 313 Kan. at 651 ("In turn, *Love* instructs that these well-established, traditional functions of the jury also define the scope of the jury trial right in Kansas, and legislative action that does not impair a traditional function of the jury does not violate section 5.").

Given that *Albano* is fresh off the presses, and we see no indication of impending departure from its holding, we will follow the Kansas Supreme Court's lead and reject Wilson's arguments on the same basis. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017) (noting Kansas Court of Appeals is duty-bound to follow Kansas Supreme Court precedent unless some indication court is departing from previous position).

Affirmed.